## Illinois Trust & Savings Bank, Complainant below. Philip Arthur Van Vlack, Executor, Appellant, v. Agnes L. Alton, Appellee.

### Gen. No. 28,354.

BANKING—*when contract for joint bank account creates joint tenancy.* A deposit of funds belonging to one of two sisters by such sister in a savings bank to the credit of the depositor and her sister to be drawn upon order of either of them whether the other is alive or not, under a contract between the parties and the bank specifying the foregoing provisions and also that it is intended and agreed that the account "shall be payable to and upon the joint and several orders of the undersigned, or either of them, or to the survivor of them," made subsequent to the Act of 1919 (Cahill's Ill. St. 1921, ch. 76), created a joint tenancy in such account with the incident of survivorship, and was not intended merely to authorize the bank to make payment in accordance with section 2 of such Act, especially where the extrinsic facts tend to show that to have been the intention of the parties.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1923. Affirmed. Opinion filed April 24, 1923. Rehearing denied April 24, 1923.

GEORGE C. OTTO, for appellant.

BUSBY, WEBER, MILLER & DONOVAN and WARNER H. ROBINSON, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This record presents the question of the right to ownership of moneys deposited in a savings account with the Illinois Trust & Savings Bank, which filed its bill of interpleader making the claimants of the fund, Philip Arthur Van Vlack, as executor of the last will and testament of Mary J. Moser, and Agnes L. Alton, parties defendant thereto. They have interpleaded,

and from a decree based on undisputed evidence that Agnes L. Alton is entitled to the moneys said executor has appealed.

Said Mary J. Moser and Agnes L. Alton were sisters. The former died on May 23, 1922, at the age of about 69, leaving an estate of mostly personal property valued at about $200,000, which by her will was to be distributed among numerous legatees, including Mrs. Alton. She was a widow for about three years before her death, and for about two and one-half years previous thereto made her home with Mrs. Alton in Winnetka. On November 24, 1920, they went together to said bank to open the savings account in question. A card used and kept by the bank in such cases was then filled out which on one side bore a number designating the account, the address of the parties, their signatures, and other data not material here, and on the opposite side a contract signed by each of them reading as follows:

"The undersigned hereby assent and agree to all the By-laws, Rules and Regulations of Illinois Trust & Savings Bank governing its Savings Accounts, with the same effect as though we had signed the Signature Book containing said By-laws and we further agree that all deposits now or hereafter made to the credit of Savings Account No. 815318 with said Bank, or any part thereof, and any interest thereon, shall be payable to the undersigned jointly or severally, and to or upon the order of either of the undersigned, whether the other be living or not, and the receipt of the person or persons so paid shall be a valid and sufficient discharge and acquaintance to said Illinois Trust & Savings Bank for any and all such payments so made. It being intended and agreed that said Savings Account shall be payable to and upon the joint and several orders of the undersigned, or either of them, or to the survivor of them."

The bank thereupon issued a deposit book which was delivered to one of them and designated the account as one between them and the bank, and stated

the deposit was subject to its by-laws. The only by-law necessary to refer to is one that "no money orders shall be payable on account of such deposits unless the depositor's bank book be produced, in order that such payments may be entered therein, unless the depositor shall prove to the satisfaction of the officers of the bank that such book has been lost, stolen, or destroyed," and indemnifies the bank against damage for payment made without its production.

All the money before it was deposited to the credit of said joint account was Mrs. Moser's. Neither party had drawn thereon. The total credit, including interest, was, on July 1, 1922, $5,855.63. The decree is for that sum with interest from that date.

In December, 1921, Mrs. Moser and Mrs. Alton went to a bank in Winnetka, where they also had a joint checking account, and secured a safety deposit box in their joint names in a vault kept by that bank. The key to the deposit box was kept in a chest belonging to Mrs. Moser in Mrs. Alton's house. About Christmas time, 1922, Mrs. Moser gave her niece, Mrs. Alton's daughter, a trunk, the key to which was also kept in said chest. At that time Mrs. Moser showed her niece where the key to the chest was and opening it showed her the key to the trunk and also the key to the safety deposit box, saying that the latter key was for her mother as well as herself to get into the deposit box. This was shortly before Mrs. Moser took a trip south. Before going she consulted the cashier of the Winnetka bank respecting the accounts in both banks, evidently to be reassured as to their status, saying in substance that she wanted everything left so that if anything should happen to her "these accounts and the contents of the box were Mrs. Alton's."

Mrs. Moser executed her will in May, 1920, and a codicil thereto May 19, 1922. Both were introduced

in evidence, but are immaterial if the contract in question, which was made in the interim, created a joint account with the incident of survivorship. The will does not expressly refer to said savings account. The claim of the executor is evidently that it falls within the residuary clause. On request therefor Mrs. Alton turned over the key to the safety deposit box to the executor, who removed its contents, including the deposit book, which was in an envelope superscribed "Property of Mary J. Moser."

The case is governed by the Act of 1919, revising the law in relation to joint rights and obligations. (Chapter 76, Cahill's Ill. St. 1921.) Section 2 of said Act reads:

"Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common; *provided*, that when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made."

Before the passage of said act the Supreme Court had held in *Erwin v. Felter*, 283 Ill. 36, that a joint tenancy might exist in personal property with the common-law incident of survivorship when expressly contracted for. The act, therefore, is declaratory of the

law as so construed if the instrument is in writing. Presumably a revision of the statute on the subject was deemed advisable because of the confusion and uncertainty that had arisen with respect to the construction of prior statutes relating thereto, decisions upon which are referred to in our opinion in *Reder v. Reder,* ante, p. 21.

In view now of the express provision of the statute for survivorship, it is unnecessary to review the previous decisions and state of the law relating to joint rights and obligations. The simple question here, as we view it, is whether the agreement aforesaid expressed an intention of the parties to bring it within the exception of the act which clearly recognizes the right to contract in writing for a joint tenancy in personal property with the right or incident of survivorship.

It will be noted that the written instrument in question not only provides that all the deposits in said savings account then or thereafter made to its credit shall be payable to the parties thereto or jointly or severally and to and upon the order of either of them *"whether the other be living or not,"* but expressly declares as its meaning and the intention of the parties that it shall be payable to *"either of them or to the survivor."* While it might be argued that the provision authorizing the payment to the order of either of the parties "whether the other be living or not," was merely intended to confer authority on the bank to make the payment in accordance with the proviso to said section 2, yet if that is all that was intended by the agreement, then the latter provision expressly declaring the meaning and intention to make the account payable "to either of them or to the survivor of them" was entirely superfluous. Reading the law into the contract it may well be inferred from the language employed in the latter provision that the parties not only had in mind a joint tenancy but its

distinguishing feature, the right or quality of survivorship. (*Slater v. Gruger,* 165 Ill. 329; *Mustain v. Gardner,* 203 Ill. 284; 23 .Cyc. p. 488.)

It is reasonable to suppose the word "survivor" was used to disclose that intent. It is difficult to conceive of any other purpose or intent in its use. The contract does not state, and it cannot reasonably be inferred without so providing, that the survivor was to take the fund in any other capacity than as its owner. The express intent of the parties as aforesaid being unnecessary to protect the bank in paying out the money, the word evidently was used with reference to the ownership of the fund and in contemplation of the law expressly authorizing the right of survivorship when the intent therefor is expressed in writing. Hence we think the contract sufficiently expresses the intent to create a joint tenancy with the incident of survivorship. This construction was given to the word "survivor" in the context of a similar contract in *Chippendale v. North Adams Sav. Bank,* 222 Mass. 499, and was cited in that connection in the *Erwin* case.

It is contended, however, that the extrinsic facts do not support that construction. While in view of the policy of the law to restrict the right of survivorship the instrument may well be closely scrutinized to determine whether it comes within the statutory exception to the abolition of such right, we do not deem the contract in question of doubtful construction so that resort to the extrinsic facts and circumstances disclosed by the evidence is necessary to ascertain its meaning.

But were we to resort to them, we think they confirm rather than negative an intention to create a joint tenancy with the right of survivorship. It is urged that because the contract of deposit was made subject to the bank's by-law requiring production of the de-

posit book in order to draw from the account, and because the deposit book was kept in Mrs. Moser's chest as aforesaid, she alone retained control of the book, and therefore had never placed it in Mrs. Alton's power to draw any money from the account. But it also appears that she not only placed the key to the chest where Mrs. Alton might use it to get the key to the safety deposit box and thus have access to the deposit book, but declared to her niece that such was her purpose, and to the cashier of the Winnetka bank that she intended that the account should belong to Mrs. Alton in case of her death. The extrinsic facts and circumstances, therefore, seem to confirm our construction of the contract, so that whether we consider the terms of the agreement alone or in connection with the facts, we entertain no doubt that it was the intent of the parties to create a joint ownership with the right of survivorship.

Accordingly the judgment will be affirmed.

*Affirmed.*

GRIDLEY and FITCH, JJ., concur.