**Mrs. M. R. HAYS, Administratrix of the Estate of Mary Etta Hutton, Deceased, Appellant,**

**v.**

**Mary Jo NELSON et al., Appellees.**

**No. 16701.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 4, 1966.

Rehearing Denied March 11, 1966.

Parkhill, Watson & Grantham and Charles W. Grantham, Jr., Grand Prairie, for appellant.

Hal Jackson and George Hopkins, Denton, for appellees.

RENFRO, Justice.

As stated succinctly by plaintiff, Mrs. M. R. Hays, this was a suit by plaintiff as administratrix of her mother's estate against her sister, Mary Jo Nelson, and the First State Bank of Denton for bank

accounts belonging to the estate and for accounting of monies withdrawn from the accounts by Mary Jo Nelson. Mrs. Nelson contended the bank accounts were given her by survivorship signature cards. The jury found that decedent did not make a gift of the accounts to Mrs. Nelson. Judgment non obstante veredicto was entered for defendants.

Since the Bank, on appeal, is treated by all parties as a mere stakeholder, we will for convenience refer to Mary Jo Nelson as defendant and Mrs. Hays, administratrix, as plaintiff.

Plaintiff's appeal is based on her contention that there was sufficient evidence of probative value to support the verdict and the court erred in rendering judgment non obstante veredicto for defendant.

The decedent, Mrs. Hutton, mother of plaintiff and defendant, died January 3, 1963. At the date of her death there was on deposit in her account in the Bank the sum of $5,237.75 in a savings account and $1,402.22 in a checking account.

Wallace Lynch, cashier in the Bank, testified he was Mrs. Hutton's account officer; that prior to Mrs. Hutton's death he talked to her by telephone and explained to her the effect of joint survivorship agreement cards; subsequent to that conversation, defendant delivered two authorization cards to him, one pertaining to the savings account and one to the checking account. He recognized defendant's exhibits 2 and 3 as being the cards in question. On the face of exhibit 2 appeared, below the name of the Bank, the words: "Below please find duly authorized signature which you will recognize in the payment of checks or the transaction of other business on our account. Yours truly." The signatures of both Mrs. Hutton and defendant appeared immediately thereafter. Exhibit No. 3 bore the signature of Mrs. Hutton on the face of the card.

On the back of Exhibit No. 2 appeared the following: "Joint Account—Payable to Either or Survivor. We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right and survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives. (Signed) Mrs. M. E. Hutton (signed) Mary Jo Nelson"; and on the back of Exhibit No. 3: "Joint Account—Payable to Either or Survivor. We agree and declare that all funds now or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives. (Signed) Mrs. M. E. Hutton (signed) Mary Jo Nelson." Lynch testified he was certain the names appearing on the cards were the genuine signatures of Mrs. Hutton and defendant. Although he might have been uncertain about some dates, he was sure, he testified, the signed cards were delivered to him in the Bank prior to Mrs. Hutton's death, and that he had explained to her before receiving the cards the effect of joint ownership accounts.

Defendant, without objection, testified about the transactions with her mother; she was the youngest of five children

and lived with her mother after the other children left home; in later years her mother made a $2,000 payment on defendant's home and until her death kept a room in defendant's home; immediately prior to Mrs. Hutton's death, Mrs. Hutton had physically resided in defendant's home for two years without charge; she did the housework; Mrs. Hutton never lived with any of the other children; Mrs. Hutton had told defendant in conversations that in the event of her death any money remaining in the Bank would belong to defendant; when defendant brought the survivor cards to her mother for signing her mother understood what the cards meant and said, "If there was anything left, it would be mine"; the statement was made in reference to both cards.

In answer to questions propounded by plaintiff's attorney, defendant testified: Mrs. Hutton suffered a light stroke in October of 1962 and in November was hospitalized with a broken hip; while Mrs. Hutton was in the hospital, Lynch told defendant that if Mrs. Hutton was going to be ill very long that defendant could sign a signature card and take care of Mrs. Hutton's affairs; he gave her two cards which she and her mother signed and which she returned to the Bank; she was questioned at length about statements she had made to the effect that the survivor cards had been delivered to the Bank after her mother's death. She maintained, however, that the cards which have heretofore been quoted were delivered to the Bank prior to her mother's death; that a second set of cards had been delivered after her mother's death under the mistaken belief that the first two (Exhibits Nos. 2 and 3) had been signed in the wrong place; she did not know what became of the second set of cards.

By deposition defendant had testified her mother had told her not to turn in the survivorship cards until after her death, but she testified at the trial that her mother was referring to the second set of cards,

that she had already turned in the ones in evidence.

Defendant was asked, "Without relating what the cards read, the purpose of the cards in the first place was so that you could take care of your mother's affairs; is this correct? A. After her death. Q. In other words, she would take care of them prior to her death, and you would take care of them after her death? A. Yes."

Although defendant testified extensively, we have above endeavored to summarize the material testimony.

Without belaboring the evidence further, we will say there is some evidence of probative value, and more than a mere scintilla of evidence, that the cards were signed by Mrs. Hutton for convenience of defendant and the Bank and that she did not intend to make a gift of the accounts to defendant.

 :Judgment non obstante veredicto is never warranted unless a directed verdict would have been proper. Before such a judgment may be sustained, it must appear that there is no evidence of probative force upon which the jury could have made its findings. Wilderspin v. Bewley Mills, 298 S.W.2d 636 (Forth Worth Civ.App., 1956, ref., n. r. e.).

We hold the court erred in setting aside the jury verdict and entering a judgment for defendant.

Defendant vigorously supports the action of the trial court. By cross-points she insists that the answers of the jury were against the great weight and preponderance of the evidence, and if the judgment of the trial court is reversed, said judgment should be reversed and the cause remanded for a new trial rather than rendered for plaintiff.

In Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962), it was held: "The phrase 'payable to the survivor' is not tantamount to the provision that 'the certificate is

held by them as joint tenants with the right of survivorship'. However, the language appearing on this receipt card does serve to vest in Mrs. Krueger some present interest in and control over the certificate as well as the contractual right to possession of the proceeds as survivor. We therefore say that it does create a presumption of such intention on the part of the purchaser of the certificate and *places the burden of proof on one claiming to the contrary."* (Emphasis added.)

The survivorship cards in the instant case contain the provision "owned by us as joint tenants with right and survivorship."

In Staver's Estate, 218 Wis. 114, 260 N.W. 655 (1935), the right of the survivor to the proceeds of a certificate of deposit made payable to Joseph Staver or Frank J. Staver was upheld. The court pointed out that in the *absence of clear evidence* that the contract was a convenience account or was created under an express agreement that the third party would hold the proceeds for the benefit of the depositor or his heirs, the complete ownership must be held to be in the survivor.

The agreement setting up a joint bank account which read, "to us, or either of us, or to the survivor of us", was held in Holbrook v. Hendricks' Estate, 175 Or. 159, 152 P.2d 573 (1944), to be some evidence of an intention on the part of the survivor to make a gift of a joint interest in the account that would suffice to make out a prima facie case in favor of the survivor asserting such an interest.

■ In determining whether a verdict is against the great weight and preponderance of the evidence, the court of civil appeals is required to consider and weigh all the evidence in the case and to set aside the verdict and remand the cause for a new trial if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, this, regardless of whether the record contains some evidence

of probative force in support of the verdict. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

In considering the evidence as required by the Supreme Court in King's Estate, we of course bear in mind the proof plaintiff was required to produce as set out in the cases heretofore cited.

■ Taking into consideration Lynch's positive and uncontradicted testimony (except perhaps some confusion as to dates), defendant's testimony as a whole concerning the relationship between herself and her mother, and all the circumstances existing at and prior to the execution of the survivorship cards, and all other evidence in the record, we are convinced that the jury verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust.

Judgment reversed and cause remanded for a new trial.

Reversed and remanded.