ARTHUR W. CHIPPENDALE, administrator, *vs.* NORTH ADAMS
SAVINGS BANK & others.

Berkshire.    September 14, 1915. — February 8, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Joint Tenants and Tenants in Common,* Of personal property.   *Savings Bank,*
Transfer of deposit.   *Contract,* Novation.

If the owner of a deposit in a savings bank goes to the bank with his sister, and
there has an entry inserted in his bank book declaring that the deposit is
"payable also to" the sister of the original depositor and that "Either party
or the survivor of them may draw the whole or any part now or hereafter de-
posited on this account with interest," and the sister thereupon signs the
by-laws of the bank and the identification card provided for depositors,
the transaction amounts to a new contract of deposit by novation between the
original depositor and his sister and the bank, and, on the death of the original
depositor, his sister is entitled to the deposit as its surviving joint owner.

A similar transfer of another deposit in another savings bank was held to create a
like joint ownership, although the words inserted in the bank book merely
stated that the deposit might be drawn by the sister of the original depositor,
the circumstances attending the transaction, which disclosed the intent of the
parties, showing that the words should be construed to mean that the deposit
might be drawn by the sister at any time either before or after the death of the
original depositor.

LORING, J. This is a bill in equity to obtain possession of a tin
box and its contents. The case was reserved * for this court upon
the pleadings and master's report.

The tin box contained four deposit books, two of the deposits
being in the Hoosac Savings Bank and two in the North Adams
Savings Bank. The other papers in the box were not of importance.
The question presented is whether these deposits belong to Mrs.
Worthington or to the administrator of the estate of Henry D.
Williams.

Henry D. Williams, the plaintiff's intestate, deposited his sur-
plus earnings in the two savings banks mentioned above. He had
a tin box in which he kept his deposit books and other papers. On
October 2, 1908 (about a year and a half before he died), he took
this box and, accompanied by his sister, Mrs. Worthington, went

---

\* In the Superior Court by *Hall,* J.

to the Hoosac Savings Bank.  At the savings bank he unlocked the box and took from it the two deposit books of that bank.  At his request the following words were inserted in each of these books, namely:  "Payable also to Abbie Worthington," and "Either party or the survivor of them may draw the whole or any part now or hereafter deposited on this account with interest."  Mrs. Worthington thereupon signed the by-laws of the bank and the necessary identification card provided for depositors.  The two books were then replaced in the tin box, and Williams, still accompanied by Mrs. Worthington, took it away with him.  Mr. Williams and Mrs. Worthington then went to the North Adams Savings Bank.  There the two deposit books of that savings bank were changed by the insertion after his (Williams's) name of these words:  "may be drawn by his sister Abbie Worthington;" and Mrs. Worthington thereupon signed the by-laws of that bank and a depositor's identification card.  One of the officers of the North Adams Savings Bank, at the request of Williams and Mrs. Worthington, prepared the following label:  "Property of Abbie Worthington," and by the direction of Williams pasted it on the tin box. After these changes had been made on the deposit books they were returned to the box and the box was locked by Williams with his key.  The box was then delivered to the North Adams Savings Bank for safe keeping, with the agreement that both Williams and Mrs. Worthington should have access to it and that either could have the privilege of drawing the money on deposit in that bank.  Williams kept the key until he died, and Mrs. Worthington had a duplicate key which she kept.  After the deposit books of the North Adams Savings Bank had been changed as stated above and the label described above had been placed upon the box, Mrs. Worthington asked the assistant treasurer of the North Adams Savings Bank if she ought not to have something to show that the box was hers, to which he answered, "Yes," and wrote out and gave to her the following receipt:  "Received of Abbie Worthington one small box, tin, locked, to be held for safe keeping."  This was signed by him.

Between October 2 and the date of his death Williams went to the North Adams Savings Bank from time to time, took the deposit books from the tin box and withdrew various sums of money. There was at least one withdrawal from each of the sums deposited under each of the four deposit books.  In each case after

making the withdrawal he returned the books to the box, locked it and handed the box back to the officials of the North Adams Savings Bank.

The master made the following finding of fact: "I find that all said changes in the bank books and accounts of both said Hoosac Savings Bank and North Adams Savings Bank were made at the request of said Henry D. Williams and with the assent of Mrs. Worthington for the purpose of transferring a joint interest in the same to Mrs. Worthington and that the changes made were in accordance with the customs of said banks for the purpose of making accounts joint so that withdrawals could be made by either party."

Mrs. Worthington has made two contentions: One, that the savings bank books were transferred to her in payment of money which was due from Williams to her; second, that they were transferred to her as a gift. The master found against Mrs. Worthington on the first contention. No argument on that ground has been addressed to the court. We treat that contention as abandoned.

In the cases heretofore before this court the question of the validity of gifts or attempted gifts of deposits in savings banks has arisen where the donor had undertaken to make a gift of them as property. The case at bar is not such a case. In the case at bar Williams did not undertake to make a gift to Mrs. Worthington of his four savings bank deposits as four pieces of property. In place of doing that he undertook to make a new deposit of the money which theretofore had been deposited in his name alone.

The new deposit in the Hoosac Savings Bank by its terms was a deposit to be paid during the lives of Williams and of Mrs. Worthington or either of them as they should call for the deposit or a part of it, and the balance (not withdrawn during their joint lives) was to be paid to the survivor of them. Such a contract between a depositor or depositors and the savings bank is a valid contract. If Mr. Williams had gone to the savings bank with a sum of money he could have made such a contract with the savings bank. What took place was the equivalent of that by reason of a novation with respect to the account theretofore on deposit in Williams's name alone. The case therefore which we have to decide is not a case of an attempted gift of property but is a case where Williams the

depositor through a novation had made a new contract with the savings bank by virtue of which either he or Mrs. Worthington could draw such sums as either in their discretion chose during their joint lives, and the balance was to be withdrawn by, and so was to belong to, the survivor.

In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she survived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on Williams's death. Mrs. Worthington takes as survivor by virtue of the terms of the deposit in the same way that a joint tenant takes as survivor where land has been conveyed (as it may be conveyed, through a conduit) by way of gift to the donor and donee as joint tenants. *Palmer* v. *Treasurer & Receiver General, ante,* 263. *Attorney General* v. *Clark, ante,* 291. If the donee survives, in that case, he takes by virtue of the estate created by the conveyance and not by virtue of a gift which takes effect upon the donor's death. This is established by the principles on which it is settled that a donor may make a valid gift of property reserving to himself a life interest in the property given. See *Bone* v. *Holmes,* 195 Mass. 495, 505, and cases there cited; *Kelley* v. *Snow,* 185 Mass. 288. The reason why there is a valid gift in that case (although there is a reservation to the donor of the income during his life) is because what is given in that case is the *corpus* of the property, and the gift of the *corpus* in such a case is complete when the gift is made and does not take effect as a gift when the donor dies.

There is nothing to the contrary in the special finding made by the master, in these words: "On one of these visits [to the North Adams Savings Bank] he spoke of the trouble in his home and said to Mr. Whitaker that he hoped the bank would take care of the box for Mrs. Worthington, and be sure and see that she and nobody else gets it. On account of these troubles and for other reasons he desired to divert this property from his wife and give whatever of it he did not use before his death to his said sister and I find it was his purpose and intention, in doing what he did toward transferring the bank books to his sister, not to part [with] full control with [of] them but to fix them so that he could draw whatever he wished on them during his life time and so that his

sister might have such amounts of said deposits as remained at the time of his death." If it had been that the gift to his sister of what was not drawn by him or her during their joint lives was to have taken effect as a gift at the time of his death it would have been a gift which was void because the statute of wills had not been complied with. But where, as in the case at bar, the right to the undrawn balance belonged to Mrs. Worthington as the survivor (if she did survive Williams) by virtue of the contract entered into between Williams, Mrs. Worthington and the savings banks, there is no gift to take effect on Williams's death and the fact that the statute of wills was not complied with is of no consequence.

The terms of the new contract entered into with the North Adams Savings Bank are not so clear as those in case of the Hoosac Savings Bank. There was no survivorship provided for in terms by the new deposit in that bank. All that was stated in that contract of deposit was "may be drawn by his sister Abbie Worthington." We are of opinion that as matter of construction this means that the deposit may be withdrawn by her at any time, i. e. before or after the death of Williams. So construed this deposit stands on the same footing as the deposit in the Hoosac Savings Bank.

Under these circumstances it is not necessary to consider whether there was a valid gift of the old or new deposit as a piece of property.

From the defendant's argument we assume that the only matter insisted upon by her is her right to the four savings bank deposits, and that she does not claim to own the tin box and other papers therein contained apart from the deposit books.

The result is that a decree may be entered directing the North Adams Savings Bank to allow Mrs. Worthington to take from the tin box in its custody, formerly the property of Henry D. Williams, the four deposit books contained therein and that it deliver to the plaintiff said box and its contents other than said deposit books and that as to the defendants Mrs. Worthington and the Hoosac Savings Bank the bill is to stand dismissed.

*So ordered.*

The case was submitted on briefs.

*C. P. Niles, F. M. Myers & C. T. Phelps,* for the plaintiff.
*P. J. Ashe & M. E. Couch,* for the defendants.