MARSHALL & ILSLEY BANK, Administrator, Respondent, vs. VOIGT, Appellant.

*December 8, 1933—January 9, 1934.*

The cause was submitted for the appellant on the brief of *Walter A. John* and *Earl H. Pottinger,* both of Milwaukee, and for the respondent on that of *Bottum, Hudnall, Lecher, McNamara & Michael* of Milwaukee.

FRITZ, J. The first and second causes of action are to recover from Emma Voigt $1,689.58 and $6,045.68, respectively, which were withdrawn by her in January and February, 1929, from the First Wisconsin National Bank, with which they were on deposit in two savings accounts in the names of "Herman or Emma Voigt." Emma Voigt was the surviving wife of Herman Voigt, deceased. He had opened the first account on July 16, 1926, by a deposit of $500 of his money, which at his direction was entered in a

pass-book delivered to him by the bank. The second account was opened by him on July 20, 1927, when he directed the bank to transfer $1,617.31, which was deposited in his own name to an account in the names of "Herman F. or Emma Voigt." The pass-book for that account was also delivered to him. While at the bank opening those accounts, he was on each occasion given two cards, one of which had the following printed agreement:

"We hereby agree to the rules and regulations as set forth in the savings pass-book and all subsequent amendments thereto. The money now and hereafter deposited is owned, jointly, by the persons named and is subject to the order of either; the balance at death of either to belong to the survivor."

On the other card there was the following:

"The deposits now or hereafter made to the account of the undersigned, whether made by them jointly or severally, are hereby declared to be their joint property, payable to either of them during their joint lives, and to the survivor on the death of the other."

"Deposits and accumulated interest, if any, may be withdrawn only by the depositor personally, or by his written order, or by his attorney in fact duly authorized so to do, by an instrument in writing properly executed and authenticated, and upon the production of his deposit book in which said payment shall be entered; but no money shall be paid on account of said deposit unless the depositor's book be produced, in order that such payments may be entered therein, unless the depositor shall prove to the satisfaction of this bank that such book has been lost, stolen, or destroyed, and in such case a duplicate book may be issued provided the depositor furnishes a bond or other indemnity satisfactory to this bank against all loss or damage on account of such payment without such book."

Herman Voigt and his wife signed those cards at their residence and he delivered them at the bank.

On the trial of this action defendant testified that, when she signed the cards, her husband said, "I am giving you

this now so that you will be taken care of." But he never placed the pass-book in her possession or control. It appears that he kept it in a dresser drawer in a room occupied only by him, and he had the exclusive possession of the key to that drawer. He died in April, 1929, aged seventy-nine years. His wife was then seventy-three years of age, and they had been married forty-two years. He left an estate of about $18,300, consisting largely of real property, and his debts were about $4,400. His will made in September, 1928, gave a life estate in his property to his widow and divided the residue equally among two daughters by a prior marriage and three children by his last marriage. A few months before his death, after he became stricken, unbalanced, and blind, he whispered to his wife that he had lost the bank-books and asked her to find them. After searching, she found them concealed by a false back in his dresser drawer, and subsequently she found the keys. On January 15, 1929, she signed a petition for the appointment of a guardian for her husband on the ground of his incompetency, and alleged therein that his estate consisted of $8,000 of personal property and $50,000 of real estate, and that his annual income was $2,500. Thereafter in January and February, 1929, without the knowledge of her husband, she presented the pass-books at the bank and withdrew all of the deposits and, with the exception of paying some taxes, she deposited the funds in her own name or used them for her own purposes. Until making those withdrawals she had never been at the bank in relation to those joint deposits, all of which were derived from her husband's income with the exception of an amount inherited by him from his mother. No part thereof was derived from the defendant. He had always provided for her and paid all of her expenses. Ten days before his death he had called at the bank with two of his sons and said that he had either lost his pass-books or some one had stolen

them. He inquired whether his money was safe and said then that he would want to withdraw some to pay the cost of some remodeling.

The court found that when the deceased had the deposits entered in the names of "Herman Voigt and Emma Voigt," and filed the signature cards, the accounts were carried in the joint names of defendant and deceased solely for his own convenience in handling the fund, in order that the defendant, with the permission of the deceased, might withdraw the funds for and in his behalf without presenting to the bank evidence in writing of the right to make such withdrawal; that at the time such deposits were made and entered in the names of Herman Voigt or Emma Voigt, and the signature cards were filed, he did not intend to give the defendant any part of the money so deposited, nor did he intend to vest in her any right, title, or interest in the fund other than the right to make withdrawals therefrom with the permission of the deceased solely for the convenience of deceased in handling the funds. The court concluded that Herman Voigt made no gift to the defendant of any present interest in the deposits, and that there was not at the time of the creation of the accounts at the bank, or at any time thereafter, a joint tenancy created in said funds; that title to said funds was at all times in him up to the date of his death, and upon his death passed to his administrator with the will annexed; and that it was entitled to recover the amount thereof in this action.

The foregoing findings are supported by the facts and circumstances established on the trial as to the manner in which Herman Voigt kept the pass-books in his exclusive possession and control, and in which he alone attended to all transactions at the bank and disposed of such funds as were withdrawn until the defendant, upon her husband's becoming incapacitated, surreptitiously deprived him of the books and

withdrew the deposits. It is quite apparent that the arrangement was merely one of convenience; that it was not intended to constitute a gift *in præsenti* or during his lifetime; or that any interest in the deposits was then vested in her excepting the bare authority to withdraw funds with his permission.

Under the printed provisions on the cards, whereby each signer expressly agreed to the rules and regulations of the bank, as set forth in the pass-books, which constituted part of the depositor's contracts with the bank, no money was to be paid on account of such deposit unless the pass-book was produced at the bank. As there never was a voluntary delivery of those pass-books by the deceased to the defendant, in so far as the actual, lawful possession of the pass-books in her own right affords any criterion, there never was a completed gift of those deposits to the defendant. In *Dupont v. Jonet*, 165 Wis. 554, 162 N. W. 664, this court said:

"Many authorities are cited by appellants to the effect that a deposit of money by one person in a bank on a pass-book or certificate of deposit in his own name and that of another jointly is not a completed gift of any part of the money so deposited so long as the depositor retains entire control of the pass-book or certificate of deposit. They will be found cited in the notes in 20 Cyc. 1204, 1205."

Under the rule thus recognized, the retention by a depositor, or other owner of a chose in action, of the exclusive possession and control of his documentary evidence thereof and of his ownership thereof, is of crucial significance in determining whether there has been a completed gift, even though the documents were issued in the name of another at the owner's directions. *Tobin v. Tobin*, 139 Wis. 494, 121 N. W. 144; *Breitenbach v. Schoen*, 183 Wis. 589, 198 N. W. 622. The failure to adhere to that rule has resulted in conflicting decisions in some jurisdictions in which

an alleged transfer was upheld either as a gift (*Dennin v. Hilton* (N. J. Ch.), 50 Atl. 600; *Holman v. Deseret Savings Bank,* 41 Utah, 340, 124 Pac. 765; *Appeal of Garland,* 126 Me. 84, 136 Atl. 459; *McCullough v. Forrest,* 84 N. J. Eq. 101, 92 Atl. 595; *Beaver v. Beaver,* 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403; *Brown v. Brown,* 23 Barb. 565; *Skillman v. Wiegand,* 54 N. J. Eq. 198, 33 Atl. 929; *Staples v. Berry,* 110 Me. 32, 85 Atl. 303; *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003; *Bradford v. Eastman,* 229 Mass. 499, 118 N. E. 879; *Battles v. Millbury Savings Bank,* 250 Mass. 180, 145 N. E. 55) or as a declaration of trust (*Carr v. Carr,* 15 Cal. App. 480, 115 Pac. 261; note L. R. A. 1917 C, 567), or as a contract (*Cleveland Trust Co. v. Scobie,* 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182; *Chippendale v. North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371). However, under each of those theories the ultimate determination as to the ownership of the deposit depends upon the court's findings under the evidence as to the intention of the original owner, and whether he actually took the necessary legal steps to effectuate his intention. In the case at bar those issues of fact were determined adversely to defendant's contentions, and, in view of the evidence, there is no occasion to disturb either the court's findings or conclusions of law. Sec. 221.45, Stats., which provides that withdrawals may be paid by banks to either one of two persons, whether the other be living or not, whenever the deposit has been made payable to either of them or the survivor, and that the receipt or acquittance of the person so paid shall be valid and sufficient release of the bank for the amount so paid, does not alter the law as stated above, or aid in determining whether there has been a completed gift or transfer; and it does not dispense with any rule of the bank which requires the production of the pass-book. The purpose and effect of that statute are to render legally effective receipts

or acquittances given to a bank upon its payment of a deposit to either of the persons to whom an account was made payable, regardless of the actual legal rights of such persons, as between themselves, to such deposits.

On the third cause of action plaintiff recovered $685 and interest which the court found belonged to and were in the possession of Herman Voigt in January, 1929, but were, without his knowledge, converted by the defendant to her own use on January 17, 1929, by depositing the same in a bank in a checking account in the name of herself and her daughter; and that no part thereof has been turned over to the plaintiff. The court's findings are not materially in conflict with a finding proposed by the defendant, that "said moneys were the sole property of the deceased and that the title thereto passed, upon his death, to the personal representative of his estate;" and the recovery thereof by plaintiff is in accord with a conclusion of law proposed by defendant, that the plaintiff is entitled to judgment against her for that sum. However, on this appeal defendant for the first time contends that the court should have allowed the defendant an equitable setoff for disbursements which she claims to have made for the benefit of the deceased and his estate. That contention cannot be entertained at this time, in view of the findings and conclusions of law proposed by the defendant in the trial court. Sec. 270.39, Stats., provides (in part) that:

"Any party who expressly requests any finding of fact, conclusion of law, instruction to the jury or ruling or order shall not be heard to question its correctness on appeal."

It is well established that, generally, no error will be considered on appeal which was not assigned or presented to the trial court. *Roseliep v. Herro,* 206 Wis. 256, 239 N. W. 413. In this case there was not even any counterclaim or pleading asserting any right to a setoff. Nevertheless, the court by an express provision in the judgment undertook to

save for the defendant the right to have the county court, in the proceedings for the probate of the estate, pass upon any claim which she may file on account of her disbursement of any of that money for the use or benefit of the deceased or his estate.

*By the Court.*—Judgment affirmed.