ESTATE OF STAVER: WIMMER, Executor, Respondent, vs. STAVER, Contestant, Appellant.

*February 5—April 30, 1935.*

*Harry E. Carthew* of Lancaster, for the appellant.

For the respondent there was a brief by *J. W. Murphy* of Cuba City and *A. W. Kopp* of Platteville, and oral argument by *Mr. Kopp* and *Mr. MacArthur McKichan* of Platteville.

MARTIN, J.    Joseph Staver died March 1, 1932, leaving a last will and testament duly executed by him on February 20, 1932.   The appellant, a nephew of the deceased, is one of the legatees named in said will.   The first provision of the will is as follows:

"After the payment of my just debts and funeral expenses I give, devise and bequeath to my nephew, Frank J. Staver, of

Hazel Green, Wisconsin, certificates of deposit of Cuba City State Bank now owned by me, amounting to $16,578.25."

Other specific bequests are made in sums aggregating $3,005. The residue of the estate is divided equally between eight nephews and nieces.

The respondent, W. G. Wimmer, is named as executor of said will and duly qualified as such on April 19, 1932. The will was admitted to probate in the county court of Grant county on April 5, 1932. The inventory and appraisal was filed April 23, 1932. The inventory included eleven certificates of deposit issued by Cuba City State Bank, dated on various dates from March 3, 1931, to February 27, 1932, both dates inclusive, and were all made payable to the order of "Joseph Staver or Frank J. Staver," with interest at the rate of four per cent per annum. Said certificates were inventoried at their face value, plus interest on each to date of decedent's death for a total of $16,578.25 principal and $192.41 accrued interest. The inventory included other personal estate appraised at $6,955.18 and real estate appraised at $6,500. The will was prepared by W. G. Wimmer at decedent's request.

At all times in question Mr. Wimmer was a stockholder, director, cashier, and active managing officer of the Cuba City State Bank, which facts were known to the deceased at the time of making his will. For some time prior to the issuing of letters testamentary, and continuing thereafter until early in July, the Cuba City State Bank experienced substantial withdrawals of deposits and heavy shrinkage in its bond account. In July, 1932, the bank went on a waiver basis, adopting the stabilization plan as provided by the laws then in force. Certain slow assets of the bank were segregated and placed in the hands of trustees, together with the proceeds of a one hundred per cent stock assessment. The depositors waived thirty-five per cent of their deposits. The banking department advised the plan to stop a run on the bank.

On July 23, 1932, Mr. Wimmer as executor, subject to the approval of the court, signed a depositor's waiver agreement. Thereafter, on petition of the executor for approval of said waiver agreement, the county court denied said petition. On October 5, 1932, the executor petitioned the county court for a construction of the will, among other things, to determine whether the specific bequest to Frank J. Staver of the certificates of deposit issued by the Cuba City State Bank in the amount of $16,578.25 is subject to the payment of debts and expenses of administration.

In its decision construing said will filed May 24, 1933, the county court held:

"That the testator did not intend to charge the payment of debts and funeral expenses upon the property [certificates of deposit] given to Frank J. Staver by the first clause of the will."

On October 29, 1932, appellant gave notice in writing to William G. Wimmer, individually and as executor, demanding the possession of the eleven certificates of deposit, specifying each in said notice. He thereby asserted his claim of ownership, and in said notice further stated:

"That in case of your refusal to deliver said certificates and each of them to the undersigned Frank J. Staver that he will take such action as he may be advised is necessary for the recovery thereof and will hold you . . . liable for all damage caused by your refusal to deliver said certificates and each of them."

The executor did not surrender said certificates, and appellant took no further action to obtain possession of them.

On September 1, 1933, the executor wrote a letter to appellant's attorney advising that Frank J. Staver had not advanced the money necessary to pay his share of the inheritance tax, and further advising that he, the executor, would pay said tax that date. On September 14, 1933, the executor filed his final account and petitioned for its settlement and for the assignment of the residue of the estate. In said final

account the executor charged himself with the inventory amount of the eleven certificates of deposit in question, and credited himself with said certificates of deposit on hand at the same amount. At the hearing on the executor's final account held November 17, 1933, appellant filed written objections to the allowance of said account; his objections being that the executor did not charge himself with the cash proceeds of the certificates with interest. He further objected to the executor taking credit for said certificates of deposit on hand at the inventoried amount.

Appellant made the further claim that, when the certificates of deposit came into the executor's hands, under the custom of banking at the Cuba City State Bank, said certificates were payable at any time upon demand; that, at the time the executor qualified, a part of said certificates was due and payable, and that the executor could have collected on all of said certificates at any time prior to July 1, 1932. He also claims that at the time of qualifying as executor, Mr. Wimmer was the cashier and active managing officer of said bank, and that, when he accepted the trust as executor and at all times thereafter, the interest of the estate conflicted with the personal interest of said executor as a stockholder, director, and officer of said bank. He further alleged that the executor failed to exercise reasonable care and good faith in the handling of said certificates; also that the bank was in financial difficulties, and that withdrawals therefrom might operate against the interest of the bank and of said W. G. Wimmer as a stockholder, officer, and director, and for that reason said executor failed and neglected to cash and collect all of said certificates.

It appears that as early as October 29, 1932, appellant demanded that the executor surrender to him the possession of the eleven certificates of deposit in question, asserting his ownership thereof, but without disclosing whether he was making said claim by virtue of the bequest in the will or by

right of survivorship as one of the payees named in the certificates. This was prior to the decision of the county court construing said will. It appears further that appellant was present when the will was executed and knew the provisions thereof; also he had known for some considerable time prior to Joseph Staver's death that all of the certificates of deposit were payable "to the order of Joseph Staver or Frank J. Staver." He testified in the county court that he made claim to the ownership of said certificates aside from the will. It does not appear that he ever had possession of the certificates or any physical control over them prior to Joseph Staver's death.

The first question for our consideration is whether appellant takes title to said certificates by right of survivorship because of being a joint payee or as a specific bequest under the will of said deceased. Upon this question there is conflict and confusion in the authorities. Under a number of decisions it has been held that in such a situation the transaction fails to meet the requirements of a trust because of the lack of intention to create a trust, and that it fails to constitute a gift because there has been no delivery of the certificates. As a matter of legal principle, there seems to be no escape from the conclusion that under the state of facts, the question is not one of transfer at all. The situation is in no way analogous to the transfer of an article of personal property or of an existing chose in action. In the latter cases courts are dealing with an item of specific property or a fully created chose in action. The property or the chose is by assumption in the hands of the donor, and, in order that the title and ownership may come to the donee in such a manner as to constitute a perfected gift, there must be a delivery. In case of joint bank accounts evidenced by certificates of deposit, the chose in action or contract claimed against the bank is at the outset created not only in the depositor but in the person whom he designates as joint payee or owner of the

deposit. The delivery of the certificates or passbook which gives vitality and existence to the chose in action must create a legal interest and ownership both in the depositor and the third person directly. No question of transfer from the depositor to the intended donee is in any manner involved. The instrument in legal contemplation vests ownership in a chose in action according to its terms. The joint interest is perfected by the initial delivery, and no further transfer is required by the depositor.

While the doctrines relating to contracts for the benefit of third persons may not be strictly applicable to cases of joint obligees, for the reason that such contracts only relate to the rights of a person other than the promisee, whereas both the depositor and the donee are promisees under such a certificate of deposit, it may be useful to consider the situation of a donee beneficiary under such a contract. Under the doctrine of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, where a contract is made for the sole benefit of a third person, it is enforceable by the third person against the promisor, even though as between such third person and the promisee no consideration passed and no obligation existed. In other words, the doctrine of donee beneficiary is recognized in this state to its fullest extent. It is also recognized in the *Tweeddale Case* that the rights of such donee beneficiary arise upon the making of the contract and not upon a ratification or assent to it; the latter elements being presumed from the fact of the benefit without burden.

It is further held that the donor-promisee may not thereafter rescind the contract without the consent of the donee beneficiary. It is of course true, as stated in Restatement, Contracts, § 133, that such a person is only a donee beneficiary "if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary, . . ." but once this is established the donee beneficiary has a right

of action against the promisor that may not be disturbed by the promisee. In other words, there is in such a situation a perfect gift.

While, for the reasons before stated, a joint promisee such as is involved here may not be treated as technically the beneficiary under a contract for the benefit of a third person, certainly his position is analogous to and even somewhat stronger than that of the donee beneficiary, if, indeed, there is a substantial rather than a technical difference between them. In the case of a donee beneficiary one might gather from the surrounding circumstances the lack of a donative intent, and thereby rebut the presumption that the person to whom the performance was to run was intended to be a donee beneficiary; that this probably could not be done in the case of joint promisees. Certainly, as between the bank and the joint promisee who is not the depositor of the money, the conclusion must be that the legal title is in such person jointly until the death of the depositor, and in such person solely as survivor upon death. The fact that this is without consideration is immaterial, except as modified by later observations. It is likewise immaterial that there may have been no donative intent on the part of the depositor. If, then, in such a situation the legal title to the chose in action is in the depositor and the other joint payee jointly, without the necessity of any delivery of the certificate by the depositor to such other person, or the sharing of its possession, then legal title to the chose, upon death of the depositor, is clearly in the survivor.

Suppose, however, that in spite of this fact it is shown that the purpose of the deposit was to constitute the payee other than the depositor a mere agent as, for example, where the depositor is ill and wishes to make it possible for another to withdraw funds and apply them to the depositor's use, in such a situation the fact of this arrangement would justify a court of equity in affecting the legal title of such person with a trust in favor of the depositor or his heirs. A similar case would be the case where A deposits money in a bank, takes a

certificate to himself and B jointly as a result of an express agreement with B that upon the death of A the funds will be distributed to A's children. There the legal title is in B upon the death of A, subject to a trust which should be enforced according to its terms. The legal title being in the survivor, it would be necessary to show by clear and satisfactory evidence a conscientious duty upon the part of the survivor to hold the title in trust for another. In the absence of such a showing the complete ownership must be held to be in the survivor.

In *Tobin v. Tobin,* 139 Wis. 494, 121 N. W. 144, a father loaned money and caused the note and mortgage to be made out to the son. He always retained possession of the note and mortgage, and claimed that he had never intended to vest any interest in his son. The contest arose between the executor of his son's estate and himself. This court held that there was no evidence of a donative intent on the part of the father to give the note and mortgage to his son; that the latter never knew of its execution; that there was no acceptance, and therefore no gift. The reasons assigned which call for this result seem to be erroneous in part. If this was a contract for the benefit of the son, his knowledge or assent was unnecessary under the doctrine of the *Tweeddale Case.* What the court really held was that from all the surrounding circumstances it was plain that the purpose of the contract was not to make a gift or contract for the benefit of the son. The case may be supported upon this ground.

In *Dupont v. Jonet,* 165 Wis. 554, 162 N. W. 664, a widower who was the father of seven adult children remarried a woman considerably younger than himself, who had been his housekeeper. After the marriage the husband renewed certain certificates of deposit and had the new certificates issued to himself and his wife jointly. The certificates were kept in a box at home subject to the control of either party. It was found that at the time when the certificates

were issued the wife entered into an agreement to distribute the deposits to the children of her husband by the former marriage. This court regarded that as determinative, and held that, even though the property in the deposit was legally vested in the wife by the terms of the certificate, a trust could be established by parole if the evidence was clear and satisfactory. The court expressly declined to consider a contention that the property in the certificates was not in the wife, for the reason that there was no delivery and no completed gift, although it indicated that there might be some validity to that contention under the authorities. What the court said on this latter point is purely *dicta,* and, except for such intimations as are unnecessarily made by the court, the case is entirely consistent with the theory that the legal title to the certificates or passbook is in the survivor, subject to any showing by clear and satisfactory evidence that would warrant affecting the legal title with a trust.

In *Breitenbach v. Schoen,* 183 Wis. 589, 198 N. W. 622, so much of the facts as are important here are that the widow purchased stock in a building and loan association and had this stock issued to herself and her son jointly. She made no delivery of the certificates to her son, but turned them over to her son-in-law for safekeeping. The right of the son to take by survivorship was denied by this court on the ground that there had been no delivery to him of the certificates. This case is clearly inconsistent with the rule announced in the instant case and will be considered overruled, as to that part of the decision in conflict herewith.

In *Marshall & Ilsley Bank v. Voigt,* 214 Wis. 27, 252 N. W. 355, a husband had an account established in the name of himself and his wife jointly. The husband retained possession of the bankbook and also of the key to the drawer in which it was placed. During his illness his wife secured the key, took possession of the bankbook and withdrew the amount of the deposit. Upon his death a contest arose be-

tween the executor of the estate and the surviving wife. It was established that the funds were those of the deceased husband; that the wife had never been to the bank except for the purpose of ultimately withdrawing the funds, and that the use of the joint names was solely for the convenience of the deceased in handling the funds, due to the fact that he was ill. The court disposed of this case on the ground that there was no delivery of the passbook and no completed gift. This ruling must likewise be modified, although the result in the *Voigt Case* was entirely correct under any view of the law. This case is similar to the illustrations heretofore given where a depositor, for the sole purpose of his own convenience, makes a joint deposit so that the other person may, for the convenience and sole benefit of the depositor, draw funds and apply them to the use of the depositor. Such a situation, if established, is sufficient to warrant affecting the legal title with a trust in favor of the husband's estate.

The result of the application of this theory is desirable. The legal ownership of instruments and the incidents of such ownership should generally depend upon their terms, leaving it to a court of equity to impose on the holder of the legal title such equitable obligations as the law of trusts warrants. In the instant case, since there was no showing of any facts sufficient to create a trust, we hold that the certificates of deposit, the legal property of which is in the survivor (appellant) and not in the estate, are not affected by any trust which would compel the survivor to account to the estate. The county court therefore has no jurisdiction over the certificates of deposit as assets of the estate.

Our banking statute, sec. 221.45, recognizes the right of survivorship where the certificate of deposit is in the names of two persons, payable to either, or payable to either or the survivor. Said statute provides:

"When a deposit has been made, or shall hereafter be made, in any bank, trust company bank or mutual savings

bank transacting business in this state in the names of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

Appellant by right of survivorship takes by virtue of the contract of deposit. *Chippendale, Adm'r, v. North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371; *Cleveland Trust Co. v. Scobie, Adm'r,* 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182; *Battles v. Millbury Savings Bank,* 250 Mass. 180, 145 N. E. 55; *New Jersey Title Guaranty & Trust Co. v. Archibald,* 91 N. J. Eq. 82, 108 Atl. 434; *Kennedy v. McMurray,* 169 Cal. 287, 146 Pac. 647, Ann. Cas. 1916D, 515; 38 Harvard Law Review, p. 244; *Rasey v. Currey's Estate,* 265. Mich. 597, 251 N. W. 784.

The sole question is whether the executor by such acts of dominion as he exercised over the certificates converted the same. This is a matter to be determined by proper proceedings in the circuit court.

Since we hold that the certificates of deposit in question were no part of the assets of the estate, it necessarily follows that the inventory and executor's final account must be corrected accordingly. The executor's fees as to his commission on the appraised value of the certificates of deposit must be stricken from the account.

*By the Court.*—Judgment reversed, and record remanded for further proceedings in accord with the opinion, appellant to have taxable costs payable out of the estate.