SCHWANKE, Executor, Appellant, vs. GARLT and another, Respondents.

*October 8—November 5, 1935.*

For the appellant there was a brief by *Edward F. Hemming* and *William G. Wheeler*, both of Janesville, and oral argument by *Mr. Wheeler*.

For the respondents there was a brief by *H. L. Maxfield* and *Jeffris, Mouat, Oestreich, Wood & Cunningham*, all of Janesville, and oral argument by *Otto A. Oestreich*.

NELSON, J. The material controlling facts are not in dispute. On and prior to June 29, 1934, Julia Schwanke was the owner of a savings account in the First National Bank of Janesville, amounting to $2,500. That account was at that time in her name and that of Ferdinand Schwanke, her deceased husband. On that day Julia Schwanke went to the bank and told its president of her desire to have her said savings account changed to her name and that of her granddaughter Leona Garlt, so that, in case of her death, Leona Garlt would be entitled to it as survivor. Her expressed desires were accomplished by her surrendering to the bank her old passbook and by the bank's issuing to her a new passbook which evidenced the deposit of $2,500 in a savings account in the names of "Julia Schwanke or Leona Garlt, Jt. a/c." Pursuant to previous appointment, Leona Garlt went to the bank, arriving there a short time after Julia Schwanke arrived. The president of the bank told her, in the presence of Julia Schwanke, what had been done. It was understood and intended by Julia Schwanke, Leona Garlt, and the bank that what was then and there being done should operate to make Julia Schwanke and Leona Garlt joint own-

ers of the account, and that, upon the death of either of them, the survivor would be the sole and absolute owner of the account or of any balance remaining therein. At the same time and as a part of the same transaction and at the request of the president, Julia Schwanke and Leona Garlt signed and delivered to the bank a printed card which contained, among other things, the following declaration:

"Joint Account—Payable to Either or Survivor.

"We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

"It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

"Payment to or on check of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto."

The new passbook provided that the account was "opened and carried subject to the following rules and regulations, which are, by the acceptance of this book, agreed to by the depositor." Rule 7, contained therein, was as follows:

"Depositors may draw out funds personally, or by order, or by written power of attorney, but no funds will be paid out except on the production of the passbook, that such payment can be entered therein, when money is drawn. Deposits made in the name of two or more persons shall be deemed joint property and may be withdrawn by either or any in the lifetime or after the death of the other or others."

The transaction was concluded by the president's handing the new passbook to Julia Schwanke in the presence of Leona Garlt. The passbook was carried away by the former

and remained in her possession until shortly before her death, when she turned it over to a Mrs. Zimmerman, by handing to the latter a package containing it and other things, but with no specific instructions concerning it. The court found in favor of the defendants and dismissed the complaint.

It must be conceded that, unless our recent rulings in *Estate of Staver*, 218 Wis. 114, 260 N. W. 655, and *Estate of Skilling*, 218 Wis. 574, 260 N. W. 660, are repudiated, they unquestionably rule this controversy. The first case mentioned was decided only after it had been considered in several conferences and had been given unusually careful consideration. After having presently given due consideration to all of plaintiff's contentions to the effect that the holdings in those cases are unsound, we adhere to the law as there stated.

The principal contention of the plaintiff is that this court was without authority to hold, as we did in the *Staver* and *Skilling Cases, supra,* that a bank certificate, payable to two persons or the survivor, or a savings account similarly payable, was governed by principles of contract rather than by the law of joint tenancies in personal property. That contention is based upon the provisions of sec. 13, art. XIV of the constitution of this state. That section provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the Legislature."

That section has been construed by this court on several occasions. In *Coburn v. Harvey*, 18 Wis. *147, it was held that the common law relating to distress for rent existed in this state at the time our constitution was adopted, having theretofore been expressly recognized by a territorial statute enacted in 1839. There was, in that case, therefore,

the imperative duty of recognizing such pre-existing common law as required by the constitution. In *Huber v. Merkel*, 117 Wis. 355, 94 N. W. 354, it was said:

"In this state, both by the constitution and judicial decision, it is settled that those parts of the common law which were in force at the time of the adoption of the constitution and were not inconsistent therewith remained in force until changed by the legislature. Const. art. XIV, sec. 13. *Coburn v. Harvey*, 18 Wis. *147. The parts of the common law which were in force at the time of the adoption of the constitution, and which have thus been recognized as remaining in force, were such parts as were reasonably applicable to our situation and government. *Coburn v. Harvey, supra.*"

In that case the well-settled common-law right of a landowner to divert, appropriate, and use percolating waters as he sees fit was recognized as a part of the common law in force in the territory of Wisconsin.

While we are at all times bound to uphold the constitution of this state, and to give due effect to its paramount provisions, we may not ignore the fact "that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions." *Dimick v. Schiedt*, 293 U. S. 474, 55 Sup. Ct. 296. To the same effect is *Funk v. United States*, 290 U. S. 371, 54 Sup. Ct. 212, 78 L. Ed. 369.

The power of the court to repudiate its prior rulings is unquestioned, though not often exercised. *Lonstorf v. Lonstorf*, 118 Wis. 159, 95 N. W. 961.

The contention of the plaintiff would be sound if it appeared that at the time our constitution was adopted there

was in force in the territory of Wisconsin common law applicable to bank certificates or savings accounts, payable to two persons or the survivor. So far as we are advised or can learn, no such common law existed in the territory of Wisconsin or elsewhere. The fact that years later this court applied to such controversies the law applicable to joint tenancies in personal property, which tenancies were not recognized by the early English common law, is not at all persuasive that such common law existed in this state in 1848. Even today, were we to attempt to say what the common law of this country is with respect to transactions of this kind, we should encounter a contrariety of opinion which would make such a task well-nigh, if not wholly, hopeless. Concededly, the courts of this country are not in agreement as to the law which should rule controversies like this. See extensive note, L. R. A. 1917C, p. 550. Citation of the prior decisions of this court which were expressly overruled by the *Staver Case, supra,* or of the decisions of other courts, decided subsequent to 1848, are without persuasive effect in determining what part of the common law, if any, with respect to this subject existed in the territory of Wisconsin prior to the adoption of our constitution.

It is our conclusion that sec. 13, art. XIV, of the constitution, does not prohibit this court from changing its opinion as to what rules should justly be applied to transactions like this.

Exactly what Julia Schwanke desired and sought to accomplish, and what all of the parties intended should be accomplished, is fulfilled by the decision herein.

*By the Court.*—Judgment affirmed.