ESTATE OF MICHAELS: MICHAELS, Appellant, v. KRUKE, Administrator w.w.a., and another, Respondents.

*January 6—February 2, 1965.*

For the appellant there was a brief by *Runkel & Runkel* of Port Washington, and oral argument by *Paul Runkel.*

For the respondents there was a brief by *Erwin N. Pauly,* attorney, and *John J. Kircher* of counsel, both of Port Washington, joined in by *Leo Schlaefer* and *Schloemer & Merriam,* all of West Bend, and oral argument by *Mr. Pauly.*

Currie, C. J. The facts of this case make it unique among the many joint bank account cases which have come before this court.

The account was originally opened in the State Bank of Newburg on September 8, 1942, in the names of Walter

Michaels or Helen Michaels with a deposit of $500. The record does not disclose the source of this $500 deposit. At that time there were two Walter Michaels. One was the husband of Helen and the other the sixteen-year old son of Walter, Sr., and his wife, Helen. Walter, Sr., and Helen resided and operated a tavern in the unincorporated village of Waubeka in Ozaukee county which is some six to eight miles distant from Newburg. Walter, Sr., died October 25, 1944. At the time of his death there was $508.77 on deposit in the joint savings account. His estate was probated in the county court of Ozaukee county and there also was a separate termination of joint-tenancy proceeding with respect to certain property he had owned in joint tenancy with Helen. The joint savings account is not referred to in either the estate or joint-tenancy proceeding. Nevertheless, we think the reasonable inference is that the Walter named as one of the two depositors when the original savings account was opened was Walter, Sr., and not Walter, Jr. There are two reasons for this: First, Walter, Jr., was then but sixteen years old and the record discloses no reason why at that time he should have been preferred over his three brothers and one sister, all of whom were older than he. Secondly, the name Walter precedes that of Helen in the bank passbook which is more consistent with Walter being the husband rather than the minor son of the codepositor, Helen.

Some time after the original opening of the account, "Jr." was written after the name of Walter in both the passbook and on the bank's ledger sheet. The reason that we conclude it was done after the opening of the account is because it is written with ink of a lighter color than the original words "Walter or Helen Michaels." The record is silent as to when this change was made. Thereafter, the word "Cancelled" was written in ink across "Walter Jr." in the passbook and "Cancelled" was also written in ink slightly below and to the left of "Walter Jr." A small arrow was also drawn

in ink after this second "Cancelled" pointing toward the cancelation of "Walter Jr." Isselman, an officer of the bank, testified that the writing of the words "Cancelled" and the drawing of the arrow were done by him and that he made these changes in the passbook on December 16, 1950. He could not recall the incident but "presumed" it was done at the request of Helen Michaels. At the same time three horizontal lines were drawn through the name "Walter Jr." on the bank's ledger sheet and the word "Cancelled" was written in ink below and to the left thereof together with the date "12/16/50" and an arrow was drawn after the word "Cancelled" pointing to the "Walter Jr." with the three horizontal lines drawn through it.

Thereafter, the words "or Harry Michaels" were written in ink in the passbook below "Helen Michaels." Harry is the son of Helen Michaels, and the brother of Walter, Jr. Mrs. Johnson, daughter of Isselman, testified that she was employed in the bank only in 1951 and 1952 and that these words "or Harry Michaels" were in her handwriting. She could not recall whether the stamped words appearing below "or Harry Michaels" which read, "A joint and several account payable to either or the survivor," were placed there by her but presumed they were and that her father was the one who told her to do so. However, Mrs. Johnson did not add any name on the bank ledger sheet covering this account. Thus ever since December 16, 1950, the bank ledger sheets named only Helen Michaels as the depositor. This we deem to be immaterial because the passbook constituted the contract between the depositor and the bank; the ledger sheet was merely the private record of the bank. Isselman testified that bank employees always had been instructed to have the two records (passbook and ledger sheet) correspond.

At the conclusion of the taking of testimony at the hearing Judge LARSON stated:

"I would like the attorneys to look at Exhibit, Harry Michaels' Exhibit No. 1 [the passbook] and ask whether it does not look to them as though this book had on the page bearing the names of the owners the names Walter or Helen Michaels. That later a 'Jr.' was written behind Walter. That after that the word 'cancelled' was written across 'Walter' and 'Jr.' and the word 'Harry Michaels' added to the book."

Counsel for the administrator with the will annexed and for Walter Michaels, Jr., both agreed with this interpretation of the exhibit, while counsel for Harry Michaels stated he refused to speculate on the sequence of events.

Both Walter, Jr., and Harry testified that they did not learn of the existence of the account until after their mother's death. The passbook was found in a little safe in the tavern at Waubeka which Helen operated from the time of her husband's death in 1944 until her own death in 1961. All deposits and withdrawals after the death of Walter, Sr., had been made by Helen. Walter, Jr., married September 16, 1950, and then left his mother's home which was in the first story of the tavern premises. Harry, who is eleven years older than Walter, Jr., had married in 1943 but lived upstairs in the tavern premises until 1957. There is testimony that Walter, Jr.'s, wife had at least one serious quarrel with Helen Michaels. Thus Walter, Jr.'s, marriage and leaving his mother's home, and possibly also the quarrel between his wife and mother, provide an explanation of why Helen had Walter, Jr.'s, name removed from the passbook as a joint payee on December 16, 1950.

Harry testified that during the years he lived upstairs in the tavern premises he helped tend bar, cut the grass, and took his mother to the doctor and dentist. When asked whether he helped out at the tavern he replied, "Quite a bit. The most," which apparently meant that he helped out more than Walter, Jr., or his other brothers and sister. The

public administrator was present in person at the hearing and asked Harry this question and received this answer:

"*Q.* Mr. Michaels, did your mother ever tell you about setting up this bank account for you? *A.* Well what she said is that she says I'm going to get more. Every time I go over to West Bend to the foot doctor because I usually took her once or twice a week. But I never knew she had any money in the bank book in Newburg."

Walter, Jr., testified that he also helped tend bar for his mother in the tavern and took her to the doctor and to Milwaukee. Helen Michaels died testate leaving a will dated January 28, 1958, which was duly admitted to probate. All of her estate except a $200 bequest for Masses was bequeathed by the residuary clause which reads:

"Because of the extra services rendered to me by my sons Harry Michaels and Walter Michaels, I give, devise and bequeath to each of them one-third (⅓) of the residue of my estate, and the remaining one-third I divide equally among all of my children, to-wit: John Michaels, Harry Michaels, William Michaels, Walter Michaels, Jr., and Frances Michaels Witte."

The total appraised value of her estate, exclusive of the bank account in question, is slightly in excess of $33,500.

The foregoing constitutes a summary of all the evidence which we consider of possible materiality on the issue of whether the administrator with the will annexed or Harry, as the survivor of the two joint payees named in the bank passbook, is entitled to the account. We now turn to the applicable statutes, case-law authorities, and writings of experts in the field, to determine whether the result below must be affirmed or reversed.

The only applicable statute is sec. 221.45, Stats., which provides:

"When a deposit has been made or shall hereafter be made, in any bank, trust company bank or mutual savings bank transacting business in this state in the names of 2 persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

*Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655, is generally regarded as the landmark decision by this court in the field of joint bank accounts. That case broke sharply with prior decisions which had applied concepts of traditional joint-tenancy law and of the law governing the creation of gifts. The opinion flatly stated (at p. 120): "No question of transfer from the depositor to the intended donee is in any manner involved." The rationale of the decision was that the survivor donee payee succeeded to the account by reason of the contract between the donor depositor and the bank as implemented by sec. 221.45, Stats.[1] Among the cases cited in support of the adoption of this contract theory were *Chippendale v. North Adams Savings Bank* (1916), 222 Mass. 499, 111 N. E. 371, and *Battles v. Millbury Savings Bank* (1924), 250 Mass. 180, 145 N. E. 55.

Of particular applicability to the instant case are these further statements made in *Estate of Staver* (at pp. 122, 124):

"The legal title being in the survivor, it would be necessary to show by clear and satisfactory evidence a conscientious duty upon the part of the survivor to hold the

[1] *Boehmer v. Boehmer* (1953), 264 Wis. 15, 19, 20, 58 N. W. (2d) 411, recognizes that sec. 221.45, Stats., is what effectuates the deposit agreement.

title in trust for another. In the absence of such a showing the complete ownership must be held to be in the survivor.

. . .

"The legal ownership of instruments and the incidents of such ownership should generally depend upon their terms, leaving it to a court of equity to impose on the holder of the legal title such equitable obligations as the law of trusts warrants."

*Estate of Staver* was a most carefully considered and well-drafted opinion. This is evident from the comment made a few months later in *Schwanke v. Garlt* (1935), 219 Wis. 367, 370, 263 N. W. 176, that *Estate of Staver* "was decided only after it had been considered in several conferences and had been given unusually careful consideration."

*Estate of Staver, supra,* holds legal title to a joint bank account is in the survivor donee payee upon the death of the donor depositor subject to equity imposing a trust upon the holder as the law of trusts warrants upon proof "by clear and satisfactory evidence." A logical and natural development of this theory would be to hold that a rebuttable presumption exists that the donor depositor intended the right of survivorship, which presumption can only be rebutted by clear and satisfactory evidence. This development found impression in *Estate of Pfeifer* (1957), 1 Wis. (2d) 609, 612, 613, 85 N. W. (2d) 370, wherein the court stated:

"Although the form of the account is not conclusive, as we said in the cases, *supra,* an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights incident to jointly owned property, such as rights of survivorship, to attach to it. Evidence showing a different intent, for instance that the joint names were adopted for convenience without the intent of conferring ownership, may serve to prove agency or trusteeship in the third party in respect to the account *but in the absence of such evidence, which must be clear and satisfactory, the presumption that the depositor intended the usual*

*incidents of jointly held property when he opened a joint account is sufficient to support a finding to that effect:"* (Emphasis supplied.)

Later cases which have restated this same rule of a presumption which can only be rebutted by clear and satisfactory evidence are *Estate of Kemmerer* (1962), 16 Wis. (2d) 480, 488, 489, 114 N. W. (2d) 803, and *Estate of Roth* (1964), 25 Wis. (2d) 528, 533, 131 N. W. (2d) 286. These and other joint-bank-account cases decided by this court subsequent to *Estate of Staver, supra,* make it clear that evidence of the intent of the donor depositor is the controlling factor, provided, however, that it be clear and convincing.

In the instant case there is no direct evidence, such as statements made to the bank employees or to others by Helen Michaels, of the intent which motivated the changes she made in the savings account subsequent to her husband's death. The fact that she at all times retained possession of the passbook, and did not disclose its existence to Walter, Jr., and Harry, gives rise to either or both of two reasonable inferences. One is that she did not intend anyone but herself to have any right to make withdrawals from this account. The other is that she wanted to have the right to change or remove the name of any donee payee at will. However, it would be indulging in pure speculation to assume that, because she wished to retain this tight control over the account during her lifetime, she did not intend to be applicable the stamped and conspicuous survivorship provision appearing in the heading of the passbook immediately following the names of herself and Harry.

Her will made in 1958, in which she treated both Walter, Jr., and Harry alike, is some evidence that she did not then intend Harry should be preferred over Walter, Jr. However, she had made no further deposits in the account subsequent to September 12, 1952. It is the intent she had at the time

she added Harry's name as a joint payee with right of survivorship which is controlling. There is no evidence of expressed intent that the account be not governed by the deposit agreement with the bank.

It is our considered judgment that no clear and convincing evidence was adduced in this record which would rebut the presumption of survivorship arising from the deposit contract with the bank as implemented by sec. 221.45, Stats. Legal title to the account passed to Harry upon his mother's death, and there exists no basis upon which a court can impress a constructive trust upon him in favor of the estate of his mother, Helen Michaels.

The county court found and determined that Harry was named as a joint codepositor for the convenience of Helen Michaels. A good illustration of a joint savings account created for the convenience of the depositor whose money constituted the source of the deposits is presented by *Plainse v. Engle* (1952), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586. There a father placed money in a joint bank account in the names of himself and daughter. The evidence established that this was done pursuant to an understanding between father and daughter that, if he got ill and needed a lot of medical attention, she would be able to withdraw money for such purpose. The father became mentally incompetent, and it was held that the joint account had been created solely for convenience and, therefore, the father's guardian was entitled to the account.

In *Estate of Kemmerer, supra,* the nature of a joint bank account for convenience was accurately characterized as one whereby an agency is created. This court therein declared (16 Wis. (2d) at p. 488):

"A joint account may give rise to an agency for what is sometimes called the joint account for the convenience of the depositor. In such a case, the nondepositor has the power

to withdraw for the benefit of the depositing owner but no rights of survivorship are intended. *Plainse v. Engle* (1952), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586; *Schwanke v. Garlt* (1935), 219 Wis. 367, 263 N. W. 176."

Professor Richard W. Effland, Estate Planning: Co-Ownership, 1958 Wisconsin Law Review, 507, 519, likewise characterizes a joint bank account for convenience as a "true agency."

In the instant case there is no direct evidence that Helen Michaels in 1951 or 1952 had the bank add Harry's name to the account as a joint payee with the right of survivorship so as to enable Harry to make withdrawals for her at some future time. This occurred nine or ten years before her death and she continued active in the management of her tavern business up until the week of her death. Under the evidence here presented it is possible to surmise that she may have had Harry's name added as a joint payee so that if she did become incapacitated at some future time he would be able to make withdrawals for her benefit. It is equally tenable to assume that because Harry was then rendering assistance to her in the tavern and about the premises that she had his name added so that he would receive the account upon her death as a reward for his services. Mere surmise and theorizing of possibilities falls far short of constituting the clear and convincing evidence required as a condition for equity imposing a trust to defeat Harry's legal title to the account as the surviving copayee.

One further issue should be explored and resolved: Whether the attempted creation of survivorship rights in Harry constituted an invalid testamentary disposition of property by Helen Michaels. There is no prior decision of this court since the enactment of sec. 221.45, Stats., which has directly passed on the question of whether the deposit of money by a donor depositor in a joint bank account, with the

intention that the named donee payee is to have no right to make withdrawals during the lifetime of the donor depositor, violates our Statute of Wills, sec. 238.06, Stats.

In *Zander v. Holly* (1957), 1 Wis. (2d) 300, 84 N. W. (2d) 87, a donor depositor created two joint savings accounts in the names of herself and her niece. It was understood between them that the niece was to have no right to withdraw during the lifetime of the aunt. Subsequently the aunt withdrew all the funds from both accounts, and this court upheld the aunt's right so to do. Later this court in *Estate of Kemmerer, supra,* summarized this holding as follows (16 Wis. (2d) at p. 488) :

"In *Zander v. Holly* (1957), 1 Wis. (2d) 300, 84 N. W. (2d) 87, a joint account was created which was construed to reserve to the depositor, an aunt, the complete right of withdrawal of the funds in the joint account created with her niece, but that the niece should have whatever remained in the account by survivorship."

From this it could be reasonably argued that by implication this court in *Zander v. Holly, supra,* had upheld the validity of the survivorship feature of a joint bank account where the intention was that the donee payee have no right of withdrawal during the lifetime of the donor depositor. However, because the point here under consideration was not directly raised in that case, we deem it inadvisable to consider that this case is necessarily controlled by the holding of the *Zander Case.*

There can be no denial of the fact that the survivorship feature of a joint bank account is testamentary in character. The fact that these accounts have been termed the "poor man's will" is an open acknowledgment of this. See *In re Edwards' Estate* (1932), 140 Or. 431, 436, 14 Pac. (2d) 274; *Barbour v. First Citizens Nat. Bank* (1957), 77 S. D. 106, 110, 86 N. W. (2d) 526; and Disposition of Bank Accounts: The Poor Man's Will, 53 Columbia Law Review

(1953), 103. Where the donee depositor is intended by the donor depositor to have the right to withdraw during his lifetime, the survivorship feature has posed no problems to the courts since there has been a transfer of a present interest to support the survivorship. Thus the transaction squares with the traditional concepts of *inter vivos* gifts.

Courts have not been much concerned with the fact that even in such a situation the donor depositor can defeat the survivorship rights of the donee payee by withdrawing all the funds prior to death. 10 Am. Jur. (2d) Banks, pp. 346–347, sec. 381. It is the situation, where the donor depositor withholds from the donee codepositor any right to withdraw during the lifetime of the donor, which has caused some courts to hold the survivorship feature of the account to be an invalid testamentary disposition. See 10 Am. Jur. (2d) Banks, p. 348, sec. 382.

The decisions of the Massachusetts court on the subject of joint bank accounts are considered "highly persuasive" by this court because Wisconsin adopted the contract theory of joint bank accounts in *Estate of Staver, supra,* from Massachusetts. *Kelberger v. First Federal Savings & Loan Asso.* (1955), 270 Wis. 434, 439, 71 N. W. (2d) 257. In *Goldston v. Randolph* (1936), 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117, it was understood between the donor and donee payee that the latter was not to withdraw from the account during the lifetime of the donor. Nevertheless, it was held that there was no invalid testamentary disposition because there was a completed contract to make a present gift. This same reasoning was advanced by the Colorado court in *First Nat. Bank v. Mulich* (1928), 83 Colo. 518, 266 Pac. 1110. See also *Batal v. Buss* (1936), 293 Mass. 329, 199 N. E. 750.

The thoughtful analyses of the problems arising in the field of joint bank accounts contained in the article by Professor Richard W. Effland, Estate Planning: Co-Owner-

ship, 1958 Wisconsin Law Review, 507; and those by Professor Kepner, The Joint and Survivorship Bank Account—A Concept Without a Name, 41 California Law Review (1953), 596; and Five More Years of the Joint Bank Account Muddle, 26 University of Chicago Law Review (1959), 376, commend themselves to this court. Both authors advocate that the survivorship feature of these accounts be enforced by the courts even though the surviving donee named as codepositor has had no right of withdrawal during the lifetime of the donor. We quote their views as follows:

"It is submitted that frank judicial recognition of an account which confers no rights during lifetime (or, as to a checking account, rights which are revocable), but carries survivorship rights, is justified, serves the modern policy of carrying out intent, and is no more a violation of the Statute of Wills than presently exists." Effland, *supra,* 1958 Wisconsin Law Review, 507, at page 520.

"The fact that the donee cannot make withdrawals may be evidence of the donor's intention, but it should not be conclusive on the question of whether or not a gift was made. The joint bank account gift is actually not intended to be a donation of an unrestricted right to make withdrawals, but is a present gift of the balance of the account, with the donee's enjoyment postponed until the donor's death. It is intended to be a form of a testamentary disposition of property in that the gift is not perfected until the donor's death. The gift should not be invalidated because the donee cannot make withdrawals." Kepner, *supra,* 26 University of Chicago Law Review (1959), 376, at page 388.

However, in order for this court to achieve this socially desirable result here and not overrule *Tucker v. Simrow* (1946), 248 Wis. 143, 21 N. W. (2d) 252, it will be necessary to ground it upon sec. 221.45, Stats., rather than the contract between Helen Michaels and the bank. In the *Tucker Case,* the owner of a savings account and a check-

ing account signed a written direction to the bank that, upon her death, the bank pay one half of these accounts to the depositor's husband, and one fourth thereof to each of her two children. The bank accepted this written direction and it became part of the deposit contract. Both the trial court and this court held that there was an ineffective testamentary disposition. The court distinguished *Estate of Staver, supra,* on the ground that in the latter case a present interest had been created in the person alleged to be a joint tenant while in the *Tucker Case* the depositor had retained complete control until death. We deem a better basis for distinguishing the two cases to be that in the one there existed a statute which vested legal title to the account in the named surviving donee depositor while in the other there is no such statute covering bank accounts standing in the sole name of the depositor but payable on death to another. *Young v. McCoy* (1950), 152 Neb. 138, 40 N. W. (2d) 540, is in accord with *Tucker v. Simrow, supra.* See also Kepner, 41 California Law Review (1953), 596, at page 615.

This court has on occasion stated that sec. 221.45, Stats., was enacted for the protection of the banks and does not determine the rights of the named payees of a joint bank account as between themselves. *Estate of Schley* (1955), 271 Wis. 74, 80, 72 N. W. (2d) 767, and *Estate of Kemmerer, supra,* at page 488. This does not mean, however, that this statute may not be pertinent on the issue of whether the attempted conferral of survivorship rights on the surviving donee payee is an ineffective testamentary disposition. It is this statute which implements the deposit contract and causes legal title to vest in the survivor payee even though equity in a proper case may intervene to impress a trust against such survivor payee. The passing of legal title is irreconcilable with the concept that such an attempted transfer is an ineffective testamentary disposition because of failure to comply with the requirements of the Statute of Wills. Thus it

necessarily follows that sec. 221.45 is a statutory exception to sec. 238.06, the same as is sec. 215.14, which we were called upon to construe in *Estate of Fucela,* post, p. 476, 132 N. W. (2d) 553.

We summarize our determination of the issues in this appeal as follows: Legal title to the joint bank savings account passed to appellant Harry Michaels upon the death of Helen Michaels. There is insufficient evidence of a contrary intent on the part of Helen Michaels to permit equity to impress a trust against Harry in favor of her estate. The reservation by Helen of full control over the account during her lifetime, thus excluding Harry from any right of withdrawal, did not invalidate the survivorship feature of the joint account so as to make it an ineffective testamentary disposition.

The joint bank account is a comparatively new device in the long development of the law. While the joint payees of such account are termed joint tenants for lack of a better terminology, the account has different attributes than a true joint tenancy. Such an account provides a useful technique for transferring property, and need not fit any of the historical and traditional property concepts associated with the law of *inter vivos* gifts and joint tenancy. It would be a mistake to ignore the deposit contract and the intent of the parties in order to apply such concepts.

*By the Court.*—Order reversed, and cause remanded for further proceedings consistent with this opinion.