PATRICK H. BOWLER *vs.* FRANK O'CONNELL.

Hampden.    September 29, 1898. — November 22, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Injury from Kick of Horse — Action — Instructions.*

If a young boy is injured by the kick of a horse, which he is approaching, not as a traveller on the way, but for the purpose of reaching and touching him, in an action against the owner of the horse for the injury, it being in dispute whether the accident occurred on the sidewalk of the way or in the defendant's adjoining barnyard, the defendant is entitled to a ruling that the "question of the sidewalk" is immaterial.

TORT, for personal injuries occasioned to the plaintiff by being kicked by the defendant's horse, through the alleged negligence of the defendant.    Trial in the Superior Court, before *Maynard,* J., who allowed a bill of exceptions, in substance as follows.

The injuries were received on February 12, 1891, when the plaintiff was five years of age.    The plaintiff lived in a house owned by the defendant's father, on Linden Street, in Holyoke, close to the barn hereinafter referred to.    The defendant testified that the horse was two years old.

The plaintiff testified, among other things, as follows:

" I remember an accident happening to me about six years ago ; the barn belonging to Daniel O'Connell, the father of Frank O'Connell, was n't far from my house.    From the yard of my house I could see into the yard of the barn ; I was acquainted at that time with Frank O'Connell.    On the day of the accident I went to school; I got out of school that day about three

o'clock; when I got out of school I started to go home; as I started home I met Charles O'Connell; I walked along with him; he was going in the direction of my home; when we got to Linden Street Charles said, ' Go over and ask your auntie if she won't leave you out with me a little while.' At this time I was living with my aunt and uncle on Linden Street; I went and asked her and she said I might, and he was waiting for me at the corner of Hampden and Linden Streets; then we went up to the barn. As you go along up Hampden Street towards the barn door there is a gate that separates the sidewalk from the O'Connell yard and there is a fence all the way along the sidewalk. I asked him if he had a bell for my sled and he said when he should get up to the barn he would see; when he got up to the barn he went up in the loft and looked for one for me, and he came down and said he could n't find any, but when the teams should come home he would get me one. In the mean time, I was waiting down at the barn, on the barn floor; after that he went into the office. About the time he went into the office I saw Frank O'Connell leading a horse on the sidewalk; he brought this horse to the front of the barn; he watered the horse there; while he was watering the horse, he said something to me and I to him; when he got through watering the horse he started down the sidewalk; he said something more to me as he was going down the sidewalk; this horse was not harnessed up or anything of that kind in the way of a harness; the horse had on a halter, and a rope was attached to the halter; Frank was leading the horse by a rope; he was going down the sidewalk towards the gate that leads into the yard; as he walked along down the sidewalk he asked me if I liked horses, and I told him I did. He says, ' Would you like to have a ride on this horse?' I says yes. He says, ' Come along and I will give you a ride.' At this time he was pretty near the gate when he said, ' Come along, I will give you a ride.' I ran up to get a ride; he stopped the horse; before I ran up I was about five or six feet from the horse's heels; as I ran up to get a ride, the horse kicked up and hit me in the eye; he knocked me down; I struck on the sidewalk on the back of my head; I do not remember anything after that until I found myself at home."

On cross-examination he testified as follows:

"He asked me if I wanted a ride, and I said I did, and I started forward to get the ride, and as I got pretty near the horse kicked up. When I got close to the horse, he kicked up; Frank was leading the horse all the time he was talking with me; not while I was running forward to get the ride; he stopped the horse when he told me to come up and get a ride. The horse had been stopped until I got up to the horse; it was n't long, and I was about as far away from him as from that [showing] to me, and I ran up to get my ride."

The defendant testified, among other things, as follows:

"He [the plaintiff] asked me if I would give him a ride on a horse that was there in the barn. I told him I would, and took him and put him on the horse's back for a minute or so, and took him down and told him to go home. I was waiting to take care of my horse, and he went along towards this place by the watering trough; I picked out my horse and gave him a drink and took him around or started to take him to his stall, and after entering the gate, and down somewhere about twenty feet from the walk, the horse made a kind of a little lunge forwards, and I looked behind, and Patrick was there just in the act like that [showing], reaching out towards the horse's tail, and before I could say a word to him the horse had kicked him in the eye."

On cross-examination he testified as follows:

"I did n't go down the front way and down to the gate, as Patrick says, and lead my horse in there; I fetched the colt out and not in; I led my horse down from the barn to the yard; I didn't lead him down the sidewalk, but I had in previous days. I took the road this day; it was n't a customary thing for me to go over the walk; I did n't see whether he was out of the barn after I told him I wanted him to go home; did n't look to see whether he had gone home; did n't see Patrick at all; the next time I saw him was in the yard right back of the colt; I saw him reaching out as if he was going to take hold of the colt's tail with his right hand; I remember that, and right there at the same instant the colt lunged forward with his head and lunged upwards with his heels; the colt lunged before I saw Patrick; he made this lunge, and I looked back and saw Patrick reaching out with his hands, I should think, as if to take hold

of his tail. He was kicked in the right side of his head; he was right close to the horse at that time; he could n't have been over a foot and a half or two feet away; I couldn't say whether he had hold of the tail or not; I was on the left side of the horse; that is, my right hand was in the halter. When I turned, I turned my head toward the horse; I turned round this way [showing], and could see back there, and could see Patrick back of the horse reaching his hand to take hold of the tail."

No other person saw the accident, and there was no further evidence of the actual occurrence of the accident.

One Knowles, an uncle of the plaintiff, and one O'Connor, testified for the plaintiff that the defendant stated to them after the accident that he was leading the horse along the sidewalk, and that a load of wood or something went by, he guessed, and frightened the horse, and he heard a cry, and looked back, and saw the plaintiff on the sidewalk. O'Connor also testified that the defendant said the accident occurred on the road.

John O'Connell, a brother of the defendant, testified for the defendant that he was at the office window in the barn and saw the defendant go by; that the defendant was in the middle of the road, going toward the gate, leading the horse along; and that he did not see the plaintiff.

At the conclusion of the evidence, the defendant requested the judge to instruct the jury that, upon all the evidence in the case, the plaintiff was not entitled to a verdict; that there was no evidence of the negligence of the defendant; and that the question of the sidewalk was immaterial in the case.

The judge declined to give the instructions asked for, and, among other things, instructed the jury as follows:

" So far as the sidewalk is concerned, that makes no difference except this, the streets are made for the purpose of public travel, the sidewalks are considered to be for travel by persons on foot. Now, if the horse was on the sidewalk, that makes no difference. That is, the fact that the horse was where it ought not to be makes no difference in this case, unless that fact, simply from being a fact, was the real cause or one of the contributing causes of the accident. That fact itself, if it has nothing to do with the accident, is not negligent, or anything which would make the defendant liable. Now, a boy of that age had a right to travel

in the street or on the sidewalk. Of course, he would have no
right to run into danger purposely or heedlessly, although some
one else was doing wrong; but if the boy, instead of being a
traveller on the street, was following the horse, wherever the
horse might go, . . . then the fact that the horse was on the
sidewalk was immaterial in this case. But if it was the horse's
being on the sidewalk and the boy being a traveller on the side-
walk caused the injury, you take that into account. I want to
draw a distinction whether the boy was a traveller on the street
in the ordinary sense, and not for the purpose of following the
horse, or whether or not he was following the horse. If his
purpose was simply to follow the horse, then it makes no differ-
ence whether he was on the sidewalk or in the middle of the
street. But you will have a right to take it into account if he
was simply going along the sidewalk for any purpose but
following the horse."

The jury returned a verdict for the plaintiff; and the defend-
ant alleged exceptions.

*T. B. O'Donnell,* for the defendant.

*W. H. Brooks,* ( *W. Hamilton* with him,) for the plaintiff.

HAMMOND, J. At the close of the evidence the defendant
requested the court to rule, first, that there was no evidence of
negligence of the defendant, and, secondly, that the question of
the sidewalk was immaterial. The court declined so to rule,
submitted the question of negligence to the jury, and instructed
them in such a manner as to indicate that in certain aspects of
the case " the question of the sidewalk " might become material,
closing this part of his charge as follows: " I want to draw a
distinction whether the boy was a traveller on the street in the
ordinary sense, and not for the purpose of following the horse,
or whether or not he was following the horse. If his purpose was
simply to follow the horse, then it makes no difference whether
he was on the sidewalk or in the middle of the street. But you
will have a right to take it into account if he was simply going
along the sidewalk for any purpose but following the horse."

We think the second instruction should have been given.
Whether the accident occurred upon the sidewalk or in the
barnyard was in dispute, but both sides agreed that at the time
the plaintiff was injured he was approaching the horse, not as a

traveller, but for the purpose of getting to him and with the intention of touching him.

The plaintiff in his examination in chief testified as follows: " He [defendant] says, ' Would you like to have a ride on this horse?' I says yes. He says, ' Come along, and I will give you a ride.' At this time he was pretty near the gate when he said, ' Come along, I will give you a ride.' I ran up to get a ride; he stopped the horse; before I ran up I was about five or six feet from the horse's heels; as I ran up to get a ride, the horse kicked up and hit me in the eye." And on cross-examination as follows: " He asked me if I wanted a ride, and I said I did, and I started forward to get the ride, and as I got pretty near the horse kicked up." And also: " The horse had been stopped until I got up to the horse; it was n't long, and I was about as far away from him as from that [showing] to me, and I ran up to get my ride."

The defendant testified thus: " The horse made a kind of a little lunge forwards, and I looked behind, and Patrick was there just in the act like that [showing] reaching out towards the horse's tail, and before I could say a word to him, the horse had kicked him in the eye." And on cross-examination as follows: " I saw him reaching out as if he was going to take hold of the colt's tail with his right hand. I remember that, and right there at the same instant the colt lunged forward with his head and lunged upwards with his heels; the colt lunged before I saw Patrick; he made this lunge, and I looked back and saw Patrick reaching out with his hands, I should think, as if to take hold of his tail." And also: " I turned round this way [showing], and could see back there, and could see Patrick back of the horse reaching his hand to take hold of the tail."

No other witness saw the accident.

The testimony of Knowles and O'Connor concerning the admission of the defendant is not inconsistent with this upon the question whether the plaintiff at the time of the accident was approaching the horse with the intention of touching him.

It is plain, we think, upon the whole evidence, that there was nothing to warrant a verdict that the plaintiff was injured as a traveller upon the highway, and in disregard of his rights as such traveller. Therefore, the " question of the sidewalk " was not at all material.          *Exceptions sustained.*