ALFRED M. STROUT, ADMR. EST.

OF CHARLES T. BURGESS

*vs.*

CHARLES M. BURGESS

Knox.    Opinion, August 12, 1949.

*Jerome C. Burrows,* for Alfred M. Strout, Adm. and heirs of Charles T. Burgess.

*Alfred M. Strout, Admr. pro se.*

*Frank F. Harding,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MERRILL, J.   This is an appeal from a decision of a single Justice of the Superior Court sitting in equity.   The bill was filed by Alfred M. Strout, Administrator of the Estate of Charles T. Burgess against Charles M. Burgess, a nephew of the deceased.   It was brought to recover certain certificates of corporate stock contained in a safety deposit box in The Thomaston National Bank in the name of "Charles T. Burgess or Charles M. Burgess."   The certificates and the shares represented thereby were claimed by the plaintiff as assets of the estate of Charles T. Burgess, and by the bill he sought to recover them from the defendant, who also claimed title thereto.   Each of the certificates was issued to "Charles T. Burgess and Charles M. Burgess as joint tenants with right of survivorship and not as tenants in common."   Included were shares in corporations organized un-

der the laws of some six different states, including Maine. The certificates represented some six hundred fifty shares approximating in value the sum of $13,000. All of the shares were originally the sole property of Charles T. Burgess.

The evidence clearly established that Charles T. Burgess, hereafter called the decedent who at the time of his decease was eighty-nine years of age, had made his home with the defendant for almost six years next prior to his death, except for a period of three months, commencing early in January, 1944 when he was in a nursing home. Prior to making his home with the defendant the decedent had conveyed his farm to another person by a deed conditioned for his support and burial. This arrangement not being satisfactory it had been cancelled by mutual consent and the property reconveyed. Sometime in the early part of 1941, the decedent came to live with the defendant, his nephew, under an arrangement whereby it was agreed that he would live with him, on trial as it were, to see whether or not conditions would be to his satisfaction, he paying board in the meantime. If things were satisfactory to him a permanent arrangement was to be effected whereby the defendant would receive his property in return for his support and burial.

After his return from the nursing home the transfer of the shares here in question was made, and shortly afterwards the farm was conveyed to the defendant by a deed conveying full title.

We are here concerned only with the effect of the transfer of the shares in question. It is clear from the evidence, and no other conclusion can be drawn therefrom, that at the time of the alleged transfer of the shares it was agreed between the defendant and the decedent that the shares were to be transferred to him in joint tenancy with the decedent, it being understood that in this manner the decedent would be protected if the defendant should die first, and that the

defendant would be protected with full title at his uncle's death.

It is also clear from all of the testimony in the case that the transfer of the shares in question and the later transfer of the farm were made to carry out the tentative arrangement entered into at the time the defendant's uncle first came to live with him, the situation evidently being to the satisfaction of the decedent, and that it was understood that the defendant would carry on in the same manner as had been previously agreed by his predecessor. The evidence clearly established that the defendant fully performed his part of the agreement, supported the decedent for the remainder of his life and paid for his burial. This was not only a technical, but a valuable consideration for the transfer of the shares in question. No other conclusion can be reasonably reached from the testimony taken as a whole.

As above stated, we are here concerned only with the effect of the transfer of these shares in the manner in which they were transferred and with the title thereto.

The evidence clearly establishes that the stock certificates were endorsed at the home of the defendant and that the endorsements were witnessed by a neighbor. Subsequently, the decedent and the defendant went to The Thomaston National Bank, delivered the certificates to the cashier of the bank and directed him to send the certificates to the various corporations for transfer of the shares to them as joint tenants. Subsequently, some of the corporations required joint tenancy agreements to be filed with them before they would issue the joint tenancy certificates. One such agreement with the Knox County Trust Company was introduced in evidence. The other joint tenancy agreements were not produced and introduced in evidence. When the certificates so issued were returned from the various corporations, they were taken by the defendant and placed in the safety deposit box, heretofore referred to, in The Thomaston Na-

tional Bank, which box stood in the name of "Charles T. Burgess or Charles M. Burgess." The evidence disclosed that the only person who went to the box after the deposit of the certificates was the defendant, Charles M. Burgess, or someone at his direction. This box had been rented by Charles M. Burgess in the joint names as above but the decedent had never signed the bank rental card. When checks for dividends declared upon the various stocks were received they were endorsed by both Charles T. and Charles M. Burgess, cashed by the defendant who brought the money back, delivered it to the decedent, who deducted therefrom such amount as he desired to use and turned the balance over to Charles M. Burgess or to his wife. Certain Central Maine Power Company Preferred Stock was called and the decedent eventually received and retained the proceeds thereof, about one thousand dollars.

The justice presiding who heard the case held that no joint tenancy was created by the transfer of these stocks and that the transaction was void as an attempted testamentary disposition not executed in accordance with the statute of wills.

The defendant claimed the determination of the issues raised by the bill in equity and the relief sought were beyond the equity powers of the court. He further claimed that as numerous shares of the corporate stock in question were in corporations, organized under the laws of, and located in, states other than the State of Maine, the validity of the transfers of such stocks should be determined according to the laws of the respective states where the corporations were organized. Counsel for the defendant requested that the court take judicial notice of the laws of the several states of incorporation of each of the corporations whose stock is in issue, and counsel for the plaintiff agreed that reasonable notice had been given to the plaintiff. The court required counsel to aid it in obtaining such information. The purpose of this request and stipulation was evidently

to invoke the provisions of the Uniform Judicial Notice of Foreign Law Act, R. S., Chap. 100, Secs. 135, 140, both inclusive, together with Sec. 141.

There is no merit to the defendant's contention that the subject matter and relief sought is beyond the equity powers of the court under R. S., Chap. 95, Sec. 4, Paragraph 11.

The defendant, so far as the record shows, possessed the only key to the safe deposit box in which the securities were deposited, and the safe deposit box was registered in his name. No suit at law would be effectual. *Farnsworth, Administratrix* v. *Whiting et als.*, 104 Me. 488; 72 A. 314. Stock certificates are within the true meaning of the statutes authorizing suits in equity to compel delivery when so situated that they cannot be replevied. *Farnsworth, Administratrix* v. *Whiting et als. supra, Reid* v. *Cromwell et al.*, 134 Me. 186; 183 A. 758. "Such possession and withholding, though not fraudulent, are enough to give the Equity Court the right to compel the surrender of the certificates. Equity has jurisdiction both under the statutes . . . and under general Equity jurisdiction. *Farnsworth, Admx.* v. *Whiting et als.*" *Reid* v. *Cromwell et al. supra,* 134 Me. at 189; 183 A. 759.

This court adheres to the common law rule that in the creation of joint tenancies, four essential elements must be present, unity of time, unity of title, unity of interest and unity of possession. *Garland, Appellant,* 126 Me. 84; 136 A. 459, affirming *Staples* v. *Berry,* 110 Me. 32; 85 A. 303. This doctrine has since been approved in *Bank* v. *Brooks,* 126 Me. 251; 137 A. 641; *Reid* v. *Cromwell,* 134 Me. 186; 183 A. 758; *MacDonough* v. *The Bank,* 136 Me. 71 at 76; 1 A. (2nd) 768; and *Rose* v. *Osborne,* 133 Me. 497; 180 A. 315. It is now too late to successfully question before this court the necessity of the presence of the four unities in the creation of joint tenancies, in either real or personal property.

In the attempted transfer of the various stocks from Charles T. Burgess to himself and Charles M. Burgess, to hold as joint tenants with right of survivorship and not as tenants in common, two of the necessary unities were lacking. At common law a man cannot make a conveyance to himself. Such action on his part is nugatory and if attempted he still holds under his original title. It follows therefore that after an attempted transfer from one to himself and another the transferor still holds under his original title which accrued to him at the time of his original aquisition of the property, be the same real or personal. No better statement can be found as to the requisities of the unities of "title and time" than that of Blackstone.

> "*Secondly*, joint-tenants must also have a unity of *title;* their estate must be created by one and the same act, whether legal or illegal; as by one and the same grant, or by one and the same disseisin. Joint-tenancy cannot arise by descent or act of law; but merely by purchase or acquisition by the act of the party: and, unless that act be one and the same, the same tenants would have different titles;" x x x

> "*Thirdly*, there must also be a unity of *time;* their estates must be vested at one and the same period, as well as by one and the same title."
> Blackstone, Commentaries, Book II, Chap. 12, Sec. II.

The transfer in question lacks at least two of the essential unities, those of title and time. Charles M. Burgess received such interest as he acquired by the transfer from Charles T. Burgess at the time of the transfer. Charles T. Burgess received such title as he had from his original transferor as of the time the stocks were originally acquired by him. The transfer in question although intended to create a joint tenancy failed to accomplish its purpose. It may be urged that this result defeats the intent of both parties. However, intent alone is not sufficient to create rights. To create intended rights, the intent must be car-

ried into effect by acts which are legally sufficient to accomplish the intended purpose. Even if the creation of a joint tenancy be intended it cannot be accomplished unless the four unities be present in the acts by which it is sought to be created. A direct transfer from a sole owner to himself and another as joint tenants lacks two of the necessary unities of joint tenancy, to wit, title and time.

At common law to create a joint tenancy between the present owner of property and another, in order to preserve the four unities, it was necessary to convey the property to a third party and have him convey to the intended joint tenants. In this way the four unities were preserved in the creation of the estate. After the enactment of the statute of uses, *if the appropriate form of conveyance* were used, it became possible for the owner of real estate to create a joint tenancy between himself and another by a single conveyance. The statute of uses, however, had no application to personal property. Therefore, it still remained necessary, if the owner of personal property desired to create a joint tenancy between himself and another, to convey the same to a third person and have him in turn convey the property to the original owner and his intended joint tenant, thus preserving the four unities necessary for the creation of a joint tenancy.

We are not unmindful of the fact that some American courts have held that a joint tenancy between the owner of property and another can be created by a direct transfer to himself and another as joint tenants. In some jurisdictions, as in Massachusetts which has anthorized by a specific statute a conveyance "by a person to himself jointly with another person in the same manner in which it might be transferred to another person" a joint tenancy may be created by such conveyance. See *Ames* v. *Chandler*, 265 Mass. 428; 164 N. E. 616. Other courts have reached the same result, as in New York, on the ground that the conveyance to a third party was a meaningless unnecessary re-

quirement. This court, however, in the decisions heretofore cited has adhered to the common law requirement that the presence of the four unities is essential to the creation of a joint tenancy. The unities of title and time cannot be present in a direct conveyance by the owner of personal property to himself and another as joint tenants.

After the decision in *Garland, Appellant, supra*, with its clear statement that the presence of the four unities was essential to the creation of a joint tenancy, had the legislature seen fit it could have provided new methods, of general application, for the creation of joint tenancies. This it did not do, but did enact a law, carefully restricted in its application, providing for survivorship in the shares of loan and building associations and comparatively small bank accounts jointly held by a limited class of persons, "even though the intention of all or any one of the parties be in whole, or in part, testamentary, and though a technical joint tenancy be not in law or fact created." P. L., 1929, Chap. 307, later R. S., 1930, Chap. 57, Sec. 25, now R. S., Chap. 55, Sec. 36, amended by P. L., 1947, Chap. 48. If the law with relation to the creation of joint tenancies or with relation to survivorship between co-owners is to be further modified it should be accomplished by the legislature and not by the court.

It is therefore held that insofar as the law of Maine is to be applied to the transfer of these certificates of stock or these corporate shares of stock, a joint tenancy therein was not created by the transfers.

It is to be noted that the shares of stock which form the subject matter of this litigation are issued by corporations organized under the laws of several states, to wit, Delaware, Indiana, Massachusetts, New York, Pennsylvania and Maine. The defendant claims that the validity of the transfers and the effect of the several transfers are to be governed by the laws of the respective states in which the several corporations are organized.

The transaction between Charles T. Burgess, the decedent, and Charles M. Burgess took place in the State of Maine, and the several *certificates* representing the corporate shares in question were present here in Maine, were here endorsed and here delivered to the cashier of the bank to be by him forwarded to the various corporations for transfer upon the books of the corporations. The determination of whether or not the validity and effect of the transfer of capital *stock* is governed by the law of the place where the transaction takes place and where the *certificate* representing the shares is located, or by the law of the state where the corporation is organized is of novel impression in this state.

In approaching this problem one must bear in mind the distinction between *shares* of stock and stock *certificates*. A share of stock is a proportional ownership in the corporation itself. The corporation being a legal entity created by and existing under the law of the state where it is organized and located, it therefore follows that the legal *situs* of the *shares of stock* is in the state where the corporation is created, and their actual transfer must be in accord with the law of that state. *Certificates* of stock, however, are tangible personal property and their transfer is subject to the law of the place where they are situated. This distinction is recognized in Restatement of the Law, Conflict of Laws, Sec. 53:

> "(1) Shares in a corporation are subject to the jurisdiction of the state in which the corporation was incorporated.
>
> (2) The share certificate is subject to the jurisdiction of the state within whose territory it is.
>
> (3) To the extent to which the law of the state in which the corporation was incorporated embodies the share in the certificate, the share is subject to the jurisdiction of the state which has jurisdiction over the certificate.

*Comment:*

a. The state in which the corporation was incorporated has jurisdiction to determine the title to and disposition of the shares.

b. The title to or disposition of the certificate is subject to the jurisdiction of the state where the certificate is at the time of the transaction in question.

c. At common law the state of incorporation will order the transfer of the shares on the books of the corporation to the holder of the legal title to the certificate; and to that extent the title to the shares depends upon the title to the certificate."

These same principles are well stated by Beale in his Treatise on The Conflict of Laws, Sec. 192.5 as follows:

"The question of who are shareholders in a corporation is clearly a question of the internal management of the corporation and is therefore not to be determined by a foreign state. But the share is evidenced by a certificate issued by the corporation to certify that the person therein named is a stockholder on the books of the corporation. By business practice this certificate is treated as the tangible representative of the stock and the owner of the certificate is entitled to be registered on the books of the corporation. If this certificate happens to be in the foreign state and is there transferred, the law of that state must determine the title to the certificate though it cannot determine the title to the share. The foreign state having determined the title to the certificate, the title to the share follows as a matter of course."

The leading English case upon this subject is *Williams* v. *Colonial Bank,* 38 Ch. D. 388, affd. 15 A. C. 267, and the leading American case is *Direction der Disconto-Gesellschaft* v. *U. S. Steel Corp.,* 267 U. S. 22; 69 L. ed. 495; 45 Sup. 207. Both of these cases are in accord with the foregoing statement of legal principles.

Although the law actually governing the transfer of *shares* is that of the jurisdiction within which the corporation is organized, at common law such jurisdiction will recognize and effectuate transfers of shares in accordance with the *title to the certificates* created by the law of the place where the *certificate* is located and its transfer takes place, unless such transfer of the certificate conflicts with some positive rule of law of the State of incorporation relative to the transfer of shares in corporations created by it. We recognize this common law rule as the law of this State. Therefore the law of Maine, the state where the certificates were located and the transfer took place, determines the title to the certificates.

Under the law of Maine, the transfer by the decedent, to himself and Charles M. Burgess, did not create a joint tenancy, though that was clearly intended. Defendant claims that with respect to shares in foreign corporations this question should be determined by the laws of the several states of incorporation, which he urges are more liberal toward the creation of joint tenancies than is the law of Maine.

This state has adopted the Uniform Judicial Notice of Foreign Law Act, R. S., Chap. 100, Secs. 135-140. This is supplemented by R. S., Chap. 100, Sec. 141.

Sections 135 and 136 are as follows:

"**Sec. 135. Judicial notice.** Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States.

**Sec. 136. Information of the court.** The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information."

Literally interpreted, Section 135 would require every court of this state from the Trial Justice in a remote country hamlet to the justices of this court to know and apply

the entire common and statutory laws of each and every separate jurisdiction within the United States, to cases in hand as occasion might arise. Such an interpretation of this statute would ascribe to justices of our courts an omniscience in the law far beyond the capabilities of mortal man, or in the alternative would require, as in this case, an independent research, on their part, into the common law and statutes of numerous jurisdictions. Statutes are to be interpreted in the light of reason, with a view to accomplishing the intended result. The purpose of the act in question was undoubtedly to simplify the method of properly bringing to the consideration of the court applicable principles of foreign law and to leave its determination to the court instead of the jury.

In Massachusetts by G. L. (Ter. Ed.) c. 233, sec. 70, it was provided:

> "The courts shall take judicial notice of the law of the United States or of any state, territory or dependency thereof, or of a foreign country, whenever the same shall be material."

In its interpretation of this statute the Massachusetts Court stated in *Smith* v. *Brown*, 302 Mass. 432; 19 N. E. 2nd (Mass.) 732, 733:

> "It is provided by G. L. (Ter. Ed.) c. 233, sec. 70, the court shall take judicial notice of the law of another State, but we are not required to take judicial notice of the law of another State except as it is brought to our attention by the record or the briefs. *Bradbury* v. *Central Vermont Railway, Inc.*, 299 Mass. 230, 12 N. E. 2nd, 732 and cases cited."

See also *Hanson* v. *Hanson*, 287 Mass. 154; 191 N. E. (Mass.) 673, 674; 93 A. L. R. 701; *Lennon* v. *Cohen*, 264 Mass. 414; 163 N. E. (Mass.) 63, 67; *Bergeron* v. *Bergeron*, 287 Mass. 524; 192 N. E. (Mass.) 86, 88; *Dadmun* v. *Dadmun*, 279 Mass. 217; 181 N. E. 264, 265.

This rule of interpretation we adopt as applicable to our own statute. Unless pertinent decisions or statutes of foreign jurisdictions are called to our attention either in the record or in the briefs, and if no evidence as to the foreign law is offered, as permitted both by the common law or by R. S., Chap. 100, Secs. 138 and 141, it is not the *duty* of court to inform itself thereof, *suo moto*. We do not mean to deny our authority to do so. Section 136 of the statute confers such authority upon the court. The foregoing construction of our statute is fortified by the further provision of Section 136 authorizing the court to "call upon counsel to aid it in obtaining such information."

The record in the instant case recites:

> "Counsel for the Defendant has requested that the Court take judicial notice of the laws of the State of incorporation of each of the corporations whose stock is in issue, and counsel for the Plaintiff agrees that reasonable notice has been given to the Plaintiff. The Court requested counsel to aid it in obtaining such information."

As already stated, the attempted transfer from the decedent to himself and Charles M. Burgess having taken place in Maine did not create a joint tenancy in the certificates, irrespective of whether or not such transfer of certificates, had it taken place within the jurisdiction of incorporation of the several corporations, would have there created a joint tenancy therein.

Except as hereinafter noted with respect to the law of Delaware, the defendant has neither called to the attention of the court, nor have we discovered any pertinent decisions or statutes from any of the foreign jurisdictions involved which would deny the general rule of the common law that the title to the corporate shares follows title to the certificate. We hold that the title to the various shares of stock represented by the several certificates in all cases (except as hereinafter noted with respect to shares in the Delaware corporation) followed the title to the certificates; that as no

joint tenancy was created in the certificates no joint tenancy was created in the shares of stock represented thereby.

Defendant's brief called attention of the court to *Skinner* v. *Educational Pictures Securities Corp.*, 14 Del. Ch. 417; 129 A. 857; also *Cantor* v. *Sachs,* 18 Del. Ch. 359; 162 A. 73. These decisions in and of themselves do not seem to us at all decisive of any issue in the case with respect to the law of Delaware, and more especially the effect of the foreign transfer of certificates of shares in Delaware corporations upon the shares themselves. We might rest our determination of the law of Delaware relative to the transfer of corporate shares upon the pertinent decisions called to our attention in this case in the brief. However, we have chosen to exercise our statutory right to consider other pertinent Delaware decisions bearing upon this issue in accord with the principles enunciated in *Bradbury* v. *Central Vermont Railway, supra.*

The Delaware decision, *Hunt* v. *Drug Inc.,* 5 W. W. Harr., Del. 332; 156 A. (Del.) 384, relying upon *Bouree et al.* v. *Trust Francais etc.,* 14 Del. Ch. 332; 127 A. 56 rejects the doctrine of *Direction der Disconto-Gesellschaft* v. *U. S. Steel Corp. supra,* and holds that title to shares in corporations organized under the laws of Delaware are to be determined by the laws of Delaware, and not by the law of the state where the transfer of the certificate takes place. This result was based upon a Delaware statute Rev. Code 1915, Sec. 1986 which reads as follows:

> "For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purposes of taxation, the situs of ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."

Even assuming that we must determine the title created by the transfer of said stock in accord with the law of

Delaware respecting the creation of joint tenancies, we arrive at the same result reached with respect to the other corporate shares.

At common law, in the absence of proof to the contrary, there is a presumption that the common law of another state is the same as that of Maine, the forum. This presumption was applied by this court to the creation of a joint tenancy in capital stock of a foreign corporation. *Reid* v. *Cromwell*, 134 Me. 186, 189; 183 A. 758; see also *Rose* v. *Osborn*, 133 Me. 497, 505; 180 A. 315, and authorities cited therein. Even though the statute provides that the court shall take judicial notice of the law of other states this presumption with respect to the common law continues, and will prevail unless overcome by evidence or by pertinent decisions or statutes called to or coming to the attention of the court. *Hanson* v. *Hanson, supra, Bradbury* v. *Central Vermont Ry., supra, Seeman* v. *Eneix,* 172 Mass. 189; 172 N. E. (Mass.) 243. *Lennon* v. *Cohen, supra.*

No pertinent decisions or statutes of Delaware relative to the creation of joint tenancies being called to the attention of the court we give effect to the presumption that the common law of Delaware with respect thereto is the same as our own. Therefore, we hold that no joint tenancy was created in the capital stock of Crowell Collier Publishing Company, the Delaware corporation.

It is evident that Charles T. Burgess made sufficient delivery of these endorsed certificates of stock to transfer title. Both the transferee and the transferor were present at the bank with these stock certificates endorsed in blank. The stock certificates in the presence of both parties were delivered to the cashier of the bank to forward for transfer on the books of the various corporations by whom they had been issued, in accordance with directions given to him. This constitutes sufficient delivery by the transferor to the transferee. Had the transfer been of the entire interest no one could question the sufficiency of the delivery to pass title

from the transferor to the transferee. The disposition of the new certificates upon their return is entirely consistent with co-ownership therein between Charles T. and Charles M. Burgess. This is true whether the interest created by the transfer be a joint tenancy or a tenancy in common in the shares. In either event, either co-tenant would be entitled to possession of the certificates. Here the certificates when received back were placed by the defendant in a safety deposit box standing in the name of both and everything that was done was in accord with an irrevocable transfer. The court below found that this transaction did not create a joint tenancy and that it was an attempted testamentary disposition of the stock and as such was void; that the stocks belonged to the estate of Charles T. Burgess and ordered that Charles M. Burgess deliver the stocks to the plaintiff and execute such instruments as were necessary to accomplish a transfer of the certificates and of the income therefrom subsequent to the death of Charles T. Burgess to the estate of Charles T. Burgess. Upon the record this decree cannot be sustained.

A joint tenancy is not a testamentary disposition of property. A joint tenancy is a present estate in which both joint tenants are seized in the case of real estate, and possessed in the case of personal property *per my* and *per tout*. One of the characteristics of a joint tenancy is a right of survivorship between the joint tenants, if the joint tenancy is still in existence. The right of survivorship, however, does not pass anything from the deceased joint tenant to the surviving joint tenant. By the very nature of joint tenancy, the title of the first joint tenant who dies terminates with his death, and as both he and his co-tenant were possessed and owners *per tout*, that is of the whole, the estate of the survivor continues as before. *Attorney General* v. *Clark,* 222 Mass. 291; 110 N. E. 299; L. R. A. 1916 c. 679; Ann. Cas. 1917B 119.

The creation of an estate in joint tenancy (if accomplished) between one who is a sole owner and another is not a testamentary transfer, but is the creation of a present estate between the then owner and another person which has as an incident to its nature survivorship in the survivor. As above noted, the survivorship, when it takes effect, is not a transfer. The termination of the estate of the deceased joint tenant is the result of its own inherent nature and limitation. The survivorship is but a continuance of the prior existing estate of the survivor. Therefore, an attempt to create a true joint tenancy, as in this case, is not an attempt at testamentary disposition. It is an attempt to create a present estate which will assure to whichever joint tenant survives absolute ownership of the whole subject matter of the joint tenancy, provided that the tenancy has not been severed during the life of both joint tenants.

Plaintiff urges that the decedent had no intent to convey a present interest to the defendant by the transfer of the securities in question. As supporting his contention he calls attention to the disposition of the proceeds of the dividend checks and the Central Maine Power Company Preferred Stock which was called. In the absence of any evidence that the decedent claimed either of them as of right, or that the defendant yielded them to the decedent in recognition thereof, the treatment of these proceeds by the parties is insufficient to overcome the effect of the other evidence, which clearly establishes the intent of the parties to create a joint tenancy in the securities which form the subject matter of this controversy.

The transfer of shares not being void as an attempted testamentary disposition, and it being ineffectual to create a joint tenancy, the determination of the rights of the parties is not without difficulties and presents questions upon which the authorities are not in accord.

It is an accepted principle of the common law that if a devise or conveyance *inter vivos* be made to two or more *as joint tenants*, if one of the intended joint tenants did not take under the conveyance because of prior death, disability, refusal to accept or otherwise, the other intended joint tenant took as sole owner of the whole estate. Tiffany, Real Property (3rd Ed.) Vol. 2, p. 200, 2 Am. & Eng. Encyc. Law (2nd Ed.) pp. 666 and 667, 4 Thompson Real Property (Perm. Ed.) Sec. 1778 on p. 316. This doctrine was recognized with respect to devises and bequests in 14 Am. J., p. 80 and in *Anderson* v. *Parsons,* 4 Me. 486, 489, which recognizes the doctrine as to intended joint tenancies and denies its application to tenancies in common. The doctrine is also recognized in *Humphrey* v. *Tayleur,* Ambler 136, 27 Eng. Reprint, 89; *Dowset* v. *Sweet, Ambler* 175, 27 Eng. Reprint, 117; *Shelley's Case,* 1 Coke 88 b., 101 a, 76 Eng. Reprint, 199, 226-7; *Alexander* v. *Alexander,* 2 Ves. Sr. 640, and Supp. 434, 28 Eng. Reprint, 408 and 569; *Overton* v. *Lacy,* 6 T. B. Monroe (Ky.) 13, 17 Am. Dec. 111; *McCord* v. *Bright,* 44 Ind. App. 275; 87 N. E. (Ind.) 654. See also *Lockhart* v. *Vandyke,* 97 Va. 356; 33 S. E. (Va.) 613. This rule to which, thus avoiding restatement, we will hereinafter refer as the *general rule,* seems to have been universally applied when the intended joint tenancy was to be created between persons other than the grantor.

In such cases due to the nature of the intended estate, the grantor intended to invest each grantee with an estate which he would hold *per tout* as well as *per my,* that is to say, each joint tenant is seized by the whole as well as by the moiety; furthermore, the grantor intended to part with his entire title, retaining no interest in himself. Therefore, no equitable principle could be invoked entitling the grantor to retain an undivided interest in himself as a tenant in common with the grantee or grantees who did take under the grant. This is well illustrated by the case of *Overton* v. *Lacy, supra,*

which distinguishes between tenancies in common and joint tenancies. In that case the court said:

"Tenants in common do not hold a joint title; their titles to land are in their nature several, and are so treated throughout all judicial proceedings. It was, therefore, no doubt correct to decide that a patent which is intended to grant an estate in common to two, does not, on account of one being dead at the time it issues, pass the entire title to the whole of the land to the survivor. A contrary decision would be giving an operation to the grant that never was intended by the grantor, and confer upon the survivor a title to which, by the clear import of the grant, he was not to be invested. But not so as respects patents which purport to grant land to two or more jointly. The title of joint tenants is not like that of tenants in common; it is not several but joint. They hold a unity of title, are said to be seised *per my et per tout,* and as the law stood at the date of the patent in question, upon the death of either tenant, the title would go to the survivor. It is not, therefore, as in the case of tenants in common, necessary to effectuate the intention of the grantor, to limit the operation of a grant to two as joint tenants, one of whom being dead at the date of the grant, to a moiety of the land only. The intention of the grantor and the object of the grant will be better attained by admitting the title to the whole to pass to the living grantee. The title must be so admitted to pass, unless we suppose what is altogether inadmissible, that by the very act of granting a joint title to two, one of whom is dead, a sort of legal severance of the title intended to be granted is produced, and we thereby, instead of making the grantee in being take a title which, as survivor, he would have held to the whole of the land, if the other grantee had been living at the date of the grant, and afterwards departed this life, we split the title, and make him, contrary to the plain import of the grant, take an estate in a moiety only, and hold the title to that moiety as tenant in common with the commonwealth."

The court then held that full title passed to the surviving joint grantee.

In the instant case if we attempt to apply the *general rule* to the transfer of the corporate shares we are faced with a somewhat different situation, not because of the nature of the property or of the estate intended to be created, but because of the situation of the parties to the transfer.

Here, there was, as we have held, a clear intent to create a joint tenancy. There being an intent to create a joint tenancy, it was an intent to create such an estate with all of its inherent qualities and attributes. There was an intent to invest the defendant with a title to these shares to be held by him *per tout* as well as *per my,* that is, a title by the whole as well as by the half. There was also an intent to confer upon him the right of survivorship. The attempted transfer was made upon a valuable consideration, moving from the defendant to the decedent. On the other hand, had the *decedent* accomplished his intended purpose, had he been able to take as a joint tenant by means of the transfer, his title would have had the same qualities that would have obtained with respect to that of the defendant. In addition to the above qualities, each joint tenant would have had the power during their joint lives to sever the estate and transform it into a tenancy in common and thus destroy the right of survivorship. The decedent, however, took nothing by the *transfer* of the shares. As no title passed to him by the transfer a joint tenancy was not created. So far as the record shows, neither the decedent nor the defendant did anything which would have severed the joint tenancy had it been created, and had it been created on the facts disclosed by the record the defendant would now be sole owner by virtue of the right of survivorship.

The instant case presents the problem whether the foregoing *general rule* applies when the intended joint tenant

who cannot or does not take under the conveyance is the grantor.

The overwhelming weight of authority, in states which deny the power on the part of a grantor to create a joint tenancy between himself and another by a direct conveyance to himself and another, is that such conveyance creates a tenancy in common between the grantor and his intended joint tenant. This result is reached upon the ground that the *grantor* did not intend to divest himself of his complete title, and the conveyance will be interpreted in such a manner as to best carry out its intent. The same result has been reached with respect to estates by the entireties which in common with joint tenancies have the quality of survivorship between the tenants and in which estates both tenants are seized or possess *per tout*. In some of the authorities, hereafter cited, the *general rule* is discussed and its application denied. In others without discussion it is held that a tenancy in common between the grantor and the grantees results from such conveyance. These cases are *Stuehm* v. *Mikulski,* 139 Neb. 374; 297 N. W. 595; 137 A. L. R. 327. *Deslauriers* v. *Senesac,* 331 Ill. 437; 163 N. E. 327; 62 A. L. R. 511. *Green* v. *Canady,* 77 S. C. 193; 57 S. E. 832. *Breitenbach* v. *Schoen,* 183 Wis. 589; 198 N. W. 622. (This case was later overruled on another point by *In Re: Staver's Estate,* 218 Wis. 114; 260 N. W. 655, 659, also *Estate of Skilling,* 218 Wis. 574; 260 N. W. 660, 662.) *Fay* v. *Smiley,* 201 Iowa 1290; 207 N. W. 369. (On rehearing, the portion of the opinion on this subject was withdrawn as not before the court. See *Fay* v. *Smiley,* 209 N. W. 307) ; *Wright et al.* v. *Knapp,* 183 Mich. 656; 150 N. W. (Mich.) 315. (In this case a majority of the court held that the estate created was a tenancy in common. Two justices held that the *general rule* would apply.) *Michigan State Bank* v. *Kern et ux.,* 189 Mich. 467; 155 N. W. 502. *Stone* v. *Culver,* 286 Mich. 263; 282 N. W. 142; 119 A. L. R. 512. *Price* v. *National Union Fire Ins. Co.,* 294 Mich. 289; 293 N. W. 652. The case of *Pegg* v. *Pegg,* 165 Mich. 228; 130 N. W. (Mich.) 617; 33

L. R. A. (N. S.) 166 Ann. Cas. 1912 c. 925, often cited with respect to creation of estate by entireties by direct conveyance from husband to wife has no bearing on the point in issue and need not be considered. In that case the conveyance by the husband to the wife was of an undivided half of the property.

The one case which holds that the intended joint tenant takes the whole title under a conveyance from the grantor to himself and others as joint tenants is *Cameron* v. *Steves,* 9 New Brunswick 141. The one case applying the same rule to a conveyance by a husband to himself and wife as tenants by the entireties is *Hicks* v. *Sprankle,* 149 Tenn. 310; 257 S. W. (Tenn.) 1044.

It is to be noted, however, that in none of the cases above cited which hold that the grantor and grantee become tenants in common does it appear that the conveyance was made upon a valuable consideration or in pursuance of a contract. In most of them the inference is plain that the conveyance was voluntary and without consideration. In *Stuehm* v. *Mikulski, supra,* the court especially calls attention to the fact that the conveyance in question was not upon a valuable consideration nor was it in pursuance of a contract.

So far as the *legal title* is concerned, and in accord with the manifest weight of authority, we hold that the transfer in question created a tenancy in common between the decedent, Charles T. Burgess and the defendant, Charles M. Burgess.

The defendant, Charles M. Burgess, further claimed that if no joint tenancy in these stocks was created they were impressed with a trust for his benefit. The justice below found that the stocks were not impressed with such trust.

Even though joint tenancies were not favored in equity a contract to convey real estate to two as joint tenants could be specifically enforced. Annotated Cases, 1917 B, 64 n.

Equity has likewise enforced agreements for survivorship between co-tenants. *Hayes* v. *Kingdome,* 1 Vern. 33, 23 Eng. Reprint, 288 and note 289.

Equity has decreed the reformation of a deed which conveyed land to two as tenants in common instead of as joint tenants according to the intent of the parties. This reformation of the deed was made after the decease of one of the co-tenants, and although the result was to give the other the entire estate by survivorship. *McVey* v. *Phillips et al.,* 259 S. W. (Mo.) 1065.

In the instant case there was a valid contract between the decedent and the defendant that the former would transfer the stocks in question in such manner that a joint tenancy therein would be created. The existence of such contract is clearly established. The contract was founded upon a valuable and sufficient consideration. Instead of the intended joint tenancy a tenancy in common was created. One of the incidents to the intended joint tenancy was the right of survivorship. Nothing was done during the lifetime of the decedent to sever the joint tenancy had the same been created, and had it been created the defendant by virtue of his right of survivorship would now be sole owner of the joint estate. The failure to create the joint tenancy was not at all due to the unwillingness of the decedent to carry out his contract to create it, nor was it due to the fact that it was impossible to create a joint tenancy in the stocks between the parties, but solely to the fact that the means employed were insufficient and inappropriate for the intended purpose. There was clearly a mutual mistake on the part of both parties in the choice of method of making the transfer, and as to its legal effect. Because of this mutual mistake the decedent became a tenant in common with the defendant instead of a joint tenant, a result not intended by him, and of which, so far as the record discloses, he never knew.

The *plaintiff*, as the personal representative of the decedent, is a tenant in common with the defendant. This title which he now holds is solely the result of the mutual mistake. The defendant, due solely to the mutual mistake, now holds legal title to an undivided half interest in the stocks, instead of full title to the same by virtue of his right of survivorship, which he would have had but for said mutual mistake.

As this transfer was founded upon a valuable consideration, the rule that an intended gift cannot be enforced as a trust as stated in *Brown v. Crafts*, 98 Me. 40, 47; 56 A. 213, has no application to the present situation. For the same reason, the rule which is subject to certain qualifications of no importance here, that a *voluntary* express trust that fails because the settlor does not effectively convey title to the trustee will not be enforced in equity by impressing the subject matter of the trust in the hands of the settlor with a constructive trust in favor of the intended beneficiary, likewise has no application to this case.

We are therefore faced with the question as to whether or not the defendant is entitled to equitable relief, either by a reformation of the transfer or by virtue of a constructive trust impressed upon the plaintiff's legal interest in these shares in favor of the defendant. If so, we must determine whether or not such relief is available to the defendant in the present action.

In determining these questions it must be remembered that the subject matter in dispute is personal property, shares of stock, and not real estate. Whether or not during the lifetime of Charles T. Burgess equity could or would have ordered the parties to convey the stocks in question to a third party, who in turn would be directed to convey them to the decedent and defendant as joint tenants, we need not decide, nor do we intimate any opinion thereon.

In *Cole* v. *Fickett*, 95 Me. 265, 270; 49 A. 1066, 1068, after having stated the equitable jurisdiction with respect to reformation of written instruments, the court made the following statements:

> "But there is another principle recognized in equity, that when one person, through mistake or fraud, obtains the legal title and apparent ownership of property which in justice and good conscience belongs to another, such property is impressed with a use in favor of the equitable owner."

Another analagous principle recognized in equity is well stated as follows in Scott on Trusts, Vol. 1, Sec. 31.3:

> "Where property is conveyed for consideration, and not as a gift, and the conveyance is ineffective to transfer the property, a court of equity will treat the transaction as though there were a precedent contract to transfer the property, and will compel the person making the conveyance to transfer the property. This, however, is not based upon the notion that the transferor declared himself trustee of the property. There is a constructive trust rather than an express trust, based upon the duty of the transferor to complete the transfer for which he received consideration."

This principle applies whether the ineffectiveness of the conveyance extends to the whole or part of the subject matter of the conveyance, and whether the ineffective nature of the conveyance is due to either fraud or mutual mistake. Scott on Trusts, Vol. III, Sec. 466.. Of the cases cited in the footnotes to this section, *Finch* v. *Green*, 255 Ill. 304; 80 N. E. 318, is especially in point, as there the consideration was personal services rendered and to be rendered in the home, as in this case. The court after holding that there was a valuable consideration further held that it would not enter into an inquiry as to the adequacy of the consideration fixed by the parties themselves.

We hold that these principles apply to the instant case, and to the extent that the plaintiff, because of the mutual mistake of the original parties to the transfer, holds legal title to these shares, he holds the same impressed with a constructive trust in favor of the defendant.

The mere fact that personal property is held upon a constructive trust does not give equity jurisdiction to order its transfer in specie to the person in favor of whom such trust exists. The transfer in specie of personal property which is the subject matter of a constructive trust will only be ordered when in addition to the existence of the trust there are present additional facts which justify and require the exercise of the equitable powers of the court in this respect, as inadequacy of legal remedy, insolvency of the constructive trustee, the unique character of the chattel, etc. See Restatement of Law, Restitution, Sec. 160 e, f, Sec. 163 d. Also see Scott on Trusts, Volume 3, Sec. 462.3. However, as said in Sec. 160 e, *supra:*

> "The refusal of the court to permit specific recovery of property in a proceeding in equity, however, does not necessarily mean that there is no constructive trust."

Although the present record discloses that the plaintiff's interest in these shares of stock is impressed with a constructive trust in favor of the defendant, the present record does not disclose such additional facts as would justify an order compelling the release of the plaintiff's legal title in these shares to the defendant. Although the defendant asserted a claim that the shares were held in trust for him before the justice below, and in his brief filed in this court reiterated his claim, he did not assert such claim either in his answer nor did he do it by cross bill. To order the plaintiff to release his legal title to the defendant would be granting to the defendant affirmative relief. The ordinary rule is, except in cases where the plaintiff is ordered to do certain things as a condition precedent to his obtaining relief

decreed to him, that affirmative relief will not be decreed in favor of the defendant in an action in equity. To obtain affirmative relief the defendant must seek it by an original bill or by a cross bill. This general principle is of especial application when no relief is decreed in favor of the plaintiff. The general rule that the defendant cannot obtain affirmative relief based upon a claim set up in his answer is found in Whitehouse Equity Practice, First Edition, Sec. 371. If the defendant cannot obtain affirmative relief based upon an answer, much less can he obtain it when his claim therefor is not even set forth in an answer.

Whether or not additional facts, not disclosed by the record, exist which would justify a court in equity in enforcing the constructive trust in the defendant's favor by compelling the plaintiff to release his legal title to an undivided interest in the stocks does not appear. If such facts do exist, the defendant should assert them and seek appropriate relief by bill in equity to enforce his equitable rights under the constructive trust. In his brief the defendant asserts that if relief is not afforded to him in the present action, he is without remedy because of the statute, R. S., Chap. 152, Sec. 15, requiring the filing of claims against estates in the Probate Court within a limited time, which time has now elapsed. Whether the provisions of R. S., Chap. 152, Sec. 15 requiring the presentation and filing of claims within a certain time and limiting the time within which actions against executors and administrators must be instituted, would apply to a bill in equity brought by the defendant to enforce the constructive trust of the legal title to specific corporate shares in his favor, he already having the certificates in his possession, or whether in case said section does apply to the defendant's claim, the defendant might have relief in equity under R. S., Chap. 152, Sec. 22, are questions not now before this court and upon which we intimate no opinion. It is to be noted in this connection that the decedent died on the fifth day of October, 1946, and that the present bill had been filed and served on the de-

fendant on the seventeenth day of June, 1947. The defendant therefore had ample opportunity to file his claim against the estate and institute action thereon well within the time limits prescribed in Section 15, *supra*. If the defendant is barred by the statute from maintaining his action, it is only because of his own delay in presenting and prosecuting his claim.

Under the present bill, for reasons before stated, the court cannot order the transfer of the plaintiff's undivided legal interest in these shares of stock to the defendant. Because the court is unable to afford the defendant affirmative relief, it by no means follows, however, that it should afford affirmative relief to the plaintiff in aid of the legal title which he holds as a constructive trustee for the defendant. It would be inequitable to order affirmative relief to the plaintiff by compelling the defendant to release to him an interest in the shares or the dividends declared upon the shares, the legal title to which in equity and good conscience the plaintiff as constructive trustee for the defendant should release to him. The plaintiff was not entitled to the relief granted him under the decree below. The defendant's appeal must be sustained. As no relief can be granted to either party under the bill, the bill should be dismissed with costs.

> *Appeal sustained.*
>
> *Decree dismissing bill with costs to be entered by the court below.*

(TOMPKINS, J., having died, did not join in this opinion.)

## Concurring Opinion

MURCHIE, J.   Judge Thaxter and I feel very real regret that we cannot give our unqualified adherence to all that Judge Merrill says in the very able opinion he has prepared in this case, in which, we feel, the court can well take pride. We can, and do, concur in the result, but we cannot subscribe to the declaration that the court foreclosed the possibility of recognizing a joint tenancy under the present facts in either *Staples* v. *Berry*, 110 Me. 32; 85 A. 303, or *Garland, Appellant*, 126 Me. 84; 136 A. 459.

In those cases, the court recognized the unities Judge Merrill notes, and their application to joint tenancies, but was dealing with bank accounts exclusively, and both opinions make it clear that the unities would not, necessarily, preclude the possibility of a joint tenancy on the present facts.   Judge Cornish said, in the *Staples* case, that the requirement of the unities:

> "would seem to contemplate conveyance or devise by A, the sole owner, to B and C, as joint tenants, not a splitting up of A's ownership so that B becomes a joint tenant with A.   But granting for the sake of argument that this might be done by carefully worded conveyance, it can hardly be said that this naked book entry meets the requirements which is so jealously guarded by the law, and that is the only evidence in the case to disclose the husband's intention."

Chief Justice Wilson said, correspondingly, in the *Garland* case, that:

> "Even if the four essentials of a joint tenancy can be present in case of a gift of property direct from one person to another, at least all the essentials of a gift as to surrender of absolute control and delivery must be complied with."

The "conveyance or devise" to which Judge Cornish referred might cover a field of lesser range than the "gift" of

Chief Justice Wilson, but while a "devise" relates exclusively to real estate, the word "conveyance" has a scope sufficiently broad to embrace both real and personal property and in the form "convey" is used regularly in bills of sale. The outstanding language of Judge Cornish, to us, in his declaration that the unities:

"would seem to contemplate,"
rather than they would require something other than a "splitting up."

The *ratio decidendi* of these cases, as of each of those Judge Merrill declares approves their common doctrine, is not that the unities are essential to the creation of joint tenancies, but that such tenancies cannot exist in the absence of proof of a gift, or an intention to give. We make no reference to any of the cases said to carry approval of a doctrine of absolutism with reference to the unities and their application to joint tenancies, except *Reed* v. *Cromwell et al.*, 134 Me. 186; 183 A. 758, which is the only one of them where the court was dealing with corporate stock. In that case, it is true, a stock certificate standing in the name of A and B "and the survivor" was held not to create a joint tenancy, but the *ratio decidendi* is carried in the words that the substitution of the particular certificate for an earlier one:

"did not effect a valid gift inter vivos."

The opinion in the *Reed* case was written by Judge Hudson for a court of which Judge Thaxter was a member. I was not. Neither at the time it was issued, nor now, can he, or I, find anything in it repudiating the dicta of Judges Cornish and Wilson declared for the express purpose, as we believe, of eliminating the possibility that the decisions could be read as closing the door against the recognition of joint tenancies created by the "splitting up" of titles of unusual facts. Judge Hudson noted that the *Garland* case, without dissent, discussed the contract doctrine which may be said

to have ruled *Chippendale* v. *North Adams Savings Bank et al.*, 222 Mass. 499; 111 N. E. 371, and rejected it, but his opinion, like that in the *Garland* case, shows that the rejection was on the ground that no gift *inter vivos* had been proved. Thereafter, it is true, he said that the opinion demonstrated:

> "how the four essential elements of joint tenancy, viz: unities of time, title, interest and possession, did not exist"

in the transaction with which the case dealt. It is true, also, that express declaration was made that the court did not choose to overrule the *Garland* case. Such a statement, however, can give that case no broader scope than it had when the opinion it carries was issued.

We subscribe to the view that attempts to create joint tenancies should be tested by the common law rule of the four unities. We believe they were satisfied in the instant case. They were declared at a time when the principal, if not the only, type of property available to be held in joint tenancy was tangible property. Each and every item of it, real or personal, had to be owned, at all times, by some one or more persons. The ownership of any one person in any single item of it was not interrupted when he executed a conveyance which conveyed some part of his title to another and purported to convey another part of it to himself. He continued to hold the latter part under his earlier, or original, title. Title to tangible personal property passes by delivery, if so intended, but title to a part of it cannot pass except by a writing describing or identifying it, the person conveying it, the part conveyed, and the person to whom it is conveyed. The same limitations, so far as they relate to conveying property, are applicable to real estate. They cannot be applied to corporate stock. Any one share of stock in a corporation is identical with each and every other. It is neither tangible nor identifiable. It cannot be described. It cannot be segregated or set apart from others

of its kind. It is represented by a certificate, it is true, and that certificate is tangible but the certificate itself has no value, as such, and is not property which can be placed in joint tenancy. A certificate representing stock may be endorsed, and will pass by delivery.

The opinion of Judge Merrill recognizes a distinction between shares of stock and the certificates representing them. We believe the distinction goes deeper. He asserts that a certificate, being tangible, comes within the rule of the unities. Recognizing that it is in fact tangible, we believe that it can be distinguished from tangible property by reason of its representative quality, and the freedom with which, when endorsed, it may pass from hand to hand and carry title not only to itself but to the stock it represents. We believe, for those reasons, that the unities may be said to be satisfied, in a stock transaction, when the owner of the certificate and the stock endorses the former and surrenders it to the corporation which issued it to secure a new certificate issued in the names of himself and another as joint tenants, without the formality of requiring as a preliminary that a new certificate be issued in the name of, and endorsed by, some third party. The only tangible things owned in such a case are the old certificate and the new. The title of the intended joint tenants in such a case to the stock and to the certificate representing it accrued at the same time and is represented by the same instrument. Such is not the case where tangible property is involved.

We are not unmindful of the fact that application of the unities principle to stock transactions will for all practical purposes preclude the possibility of joint tenancies in such property except in cases where the parties act at the place where a particular corporation has its domicile or a transfer office. Nor can we be unmindful of the fact that recognition of their application in the strict manner in which that application is made in Judge Merrill's opinion has forced such strained construction as that parties have cre-

ated tenancies in common contrary to their express intention, that an owner has conveyed away his full title when he never intended to do so, and that he has created either an estoppel against himself or a contract which binds him, and his estate.

Judge Merrill's opinion records that in more than one instance the corporations which issued the stock certificates in controversy required the parties to the contract the opinion declares was validly entered into by them to execute what are designated as "joint tenancy agreements" before they would issue the joint tenancy certificates. Because of this recognition, we refer back to the language used by Judges Cornish and Wilson in the *Staples* and *Garland* cases. Judge Cornish declared that a:

"naked book entry"

could not meet the requirements of the law. Judge Wilson said merely that there must be:

"surrender of absolute control and delivery."
When parties have executed a formal agreement to evidence their undertaking to place property in joint tenancy, it cannot be said that they are attempting to rest on a "naked book entry," nor can it be denied that there have been both "surrender of absolute control and delivery."

We would reach the result declared in the opinion of Judge Merrill by holding that after the issue of the stock certificates in question, Charles T. Burgess and Charles M. Burgess were joint tenants by reason of the fact that the unities of time, title, interest and possession were all satisfied in the transaction in which they engaged.

In all other respects we concur in Judge Merrill's opinion.